[No. A038881. First Dist., Div. Four. June 22, 1988.]

JOHN PHILLIP SMITH, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent.

COUNSEL

Jerome Berg for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Alfredo Terrazas, Deputy Attorney General, for Defendant and Respondent.

OPINION

CHANNELL, J.—In this case of first impression, we are asked to determine the constitutionality of section 2292 of the Business and Professions Code,[1] authorizing the Board of Medical Quality Assurance[2] to compel a physician to undergo a professional competency examination. Respondent board, without first granting appellant John Phillip Smith, M.D., the right to appear at its hearing, ordered him to undergo this examination. On appeal, Smith contends, inter alia, that the board's procedure denied him

---

[1] All statutory references are to the Business and Professions Code, unless otherwise indicated.

[2] The Board of Medical Quality Assurance is a state agency within the Department of Consumer Affairs. (§ 2001.) It is composed of several divisions, including the Division of Medical Quality. (§ 2003.) This division is responsible for reviewing the quality of medical practice carried out by physicians licensed in this state, carrying out disciplinary actions appropriate to medical quality review findings, and enforcing the disciplinary provisions of the Medical Practice Act. (§ 2004, subds. (a), (c), (e); see §§ 2000-2515 [Medical Practice Act].)

equal protection and due process. We reject these contentions and affirm the trial court's judgment.

## I. FACTS

Appellant John Phillip Smith is a physician licensed to practice in this state. In May 1986, the executive director of the respondent Board of Medical Quality Assurance (the Board) prepared a petition requesting that Smith be compelled to take a professional competency examination. The petition alleged reasonable cause to believe that Smith was "unable to practice medicine with reasonable skill and safety to patients" and set forth, as a factual basis for this claim, five case histories of cardiac patients whom Smith was alleged to have improperly treated. Two cardiologists reviewed these case histories and concurred in the director's recommendation.

Smith filed a timely written response to this petition and requested a hearing on the allegations. However, the Board approved the petition without granting Smith's request and ordered him to undergo an examination. After reconsideration, an identical order was issued, also without first allowing Smith to appear at the hearing.

In January 1987, Smith filed a complaint, seeking declaratory and injunctive relief, a writ of mandate, and attorney fees. The trial court found that to be compelled to undergo an examination was not an infringement of such a significant liberty as to require the panoply of due process rights. Finding that Smith's constitutional rights would be adequately protected if he failed the competency examination, the trial court denied the requested relief and entered judgment for the Board.

## II. REASONABLE CAUSE PROCEEDING

### A. *Statutory Procedure*

To understand Smith's contentions on appeal, we first review the statutory scheme. Operative since 1985 (Stats. 1983, ch. 398, §§ 3, 6, pp. 1662-1663), section 2292 allows the Board to order a physician to undergo a professional competency examination if there is reasonable cause to believe that the physician is unable to practice medicine with reasonable skill and safety to patients. Reasonable cause is defined as a single act of gross negligence, a pattern of inappropriate prescribing, an act of incompetence or negligence causing death or serious bodily injury, or a pattern of substandard care. (§ 2292, subd. (a); see also §§ 820-824.)

Before a physician may be compelled to undergo an examination, a statutorily ordained procedure must be followed. First, the Board's medical

consultant conducts an investigation and review, and concludes that reasonable cause exists to believe that the physician is unable to practice medicine with reasonable skill and safety to patients. At least one outside medical consultant must review the matter and concur in this conclusion. (§ 2292, subd. (a).) Next, the Board's executive director prepares a written petition detailing the reasonable cause and all conclusions and facts on which this presumption is based. A copy of the petition is served on the physician, who may file written opposition to it. (§ 2292, subd. (b); see Gov. Code, § 11505, subd. (c).) The Board's Division of Medical Quality may consider the petition or may assign it to a medical quality review committee for consideration. (§ 2292, subd. (c); see § 2323.) This body must review the petition and opposition, and *may* conduct a hearing to determine if reasonable cause exists. (§ 2292, subd. (d); see Gov. Code, §§ 11500-11528.) If this body finds that reasonable cause exists, it must order the physician to undergo a professional competency examination. (§ 2292, subd. (d).) At the oral clinical examination, two physicians test the examinee on general medical knowledge and any special knowledge of one in the examinee's type of practice. (§ 2293, subd. (a).)

If the physician passes the examination, an accusation of incompetency may not be filed if based solely on the circumstances giving rise to reasonable cause for the examination. (§ 2294, subd. (a).) In this circumstance, all agency records of the proceedings must be kept confidential and are not subject to discovery or subpoena. (§ 2294, subd. (b).) If no further proceedings have been conducted to determine the physician's fitness to practice five years after the date of the petition, the agency must purge and destroy all records of the proceedings. (§ 2294, subd. (c).)

If both examiners agree that the physician failed the professional competency examination, a second examination is ordered before two other physicians. (§ 2293, subd. (b).) If the examinee fails the second examination, an accusation of incompetence *may* be filed against the physician. (§ 2293, subd. (c); see §§ 2230, 2234, subd. (d).)[3] Incompetence is a form of unprofessional conduct which, if proven, may result in the revocation of a physician's license. (§ 2234, subd. (d); see § 2227, subd. (a).)[4]

A physician who fails to comply with the Board's order to undergo the examination is guilty of unprofessional conduct. (§ 2292, subd. (d).) Under

---

[3] According to the legislative history, the Senate Committee on Health and Welfare rejected a proposal *requiring* the Board to take action against a physician who fails the examination. (See § 2293, subd. (c) [Board *may* take action].)

[4] The term "unprofessional conduct" is sufficiently specific when applied to a particular occupation and given context by reference to fitness for the performance of that vocation. (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 766 [221 Cal.Rptr. 779, 710 P.2d 845]; *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 574-575 [146 Cal.Rptr. 653].)

these circumstances, an accusation of unprofessional conduct *must* be filed against the physician. (§§ 2234, 2292, subd. (d).) This accusation subjects the physician to discipline and places his or her license to practice medicine in jeopardy. (See § 2227, subds. (a), (b); see also *Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138, 1141 [212 Cal.Rptr. 811].) At all proceedings conducted pursuant to the accusation, the physician is entitled to a full range of due process rights, including the rights to receive notice by verified accusation, to have a hearing conducted before an administrative law judge, to conduct and compel discovery, to compel attendance or document production by subpoena, to be represented by counsel, to attend the hearing, to present any relevant evidence, to cross-examine witnesses, and to receive a statement of decision. (§§ 2230, 2293, subd. (c); see Gov. Code, §§ 11502, 11503, 11505, subd. (a), 11506, subd. (b), 11507.6-11507.7, 11509-11513, 11517.) Section 2292 does not require these procedural rights to be afforded to physicians when the Board makes a reasonable cause determination. This procedure forms the basis of Smith's contentions on appeal.

## B. *Investigation or Accusation?*

■ The nature of the Board's reasonable cause proceeding is the one overriding issue on appeal. Is this an investigative proceeding or is it the equivalent of an accusation—the formal charge that must be brought before a physician's license to practice medicine may be revoked? (See §§ 2227, subd. (a), 2230; see also *Wood* v. *Superior Court, supra,* 166 Cal.App.3d at p. 1141.)

We believe that the reasonable cause proceeding is investigative rather than adjudicative. Procedural due process rights need not be conferred on those appearing before "purely investigative agencies" such as the federal Commission on Civil Rights. (*Hannah* v. *Larche* (1960) 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502].) In *Hannah,* the court held that the Commission's function was "investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of . . . life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action." (*Id.,* at p. 441 [4 L.Ed.2d at p. 1321].)

The Board's authority is somewhat different from that of the Commission on Civil Rights. As illustrated by this case, the Board has statutory authority to issue orders—to compel a physician to undergo a professional compe-

tency examination. Does this authority transform the Board's proceedings into an adjudication? (See *Hannah* v. *Larche, supra,* 363 U.S. at pp. 440-441[4 L.Ed.2d at pp. 1320-1321]; *Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 45 [161 Cal.Rptr. 392] [due process applies to quasi-judicial administrative proceedings].) We believe that it does not. Recently, the United States Supreme Court held that the federal Securities and Exchange Commission was an investigative agency, despite the fact that the Commission was authorized to issue subpoenas pursuant to its investigations and could force compliance by bringing an action in federal court. (See *SEC* v. *Jerry T. O'Brien, Inc.* (1984) 467 U.S. 735, 741-742 [81 L.Ed.2d 615, 621, 104 S.Ct. 2720].) "The sole purpose of the preliminary investigation is to determine whether there is any factual basis for considering the initiation of a formal hearing and the incident drafting of a formal accusatory pleading." (*McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 519, fn. 5 [116 Cal.Rptr. 260, 526 P.2d 268].) We do not believe that the Board's statutory authority to order a physician against whom a reasonable suspicion of incompetency has been established to undergo a professional competency examination alters the investigative nature of the reasonable cause proceeding.

In like manner, the fact that repeated failure of the required examination constitutes evidence of incompetence which may lead to revocation of his license does not transform the Board's reasonable cause proceeding into an adjudicative matter. In *Hannah* v. *Larche, supra,* 363 U.S. 420, persons alleged to have deprived Blacks of the right to vote challenged an investigation conducted by the Commission on Civil Rights (*id.,* at pp. 421-422 [4 L.Ed.2d at p. 1310]), arguing that due process rights attached to these investigatory proceedings because they might "irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions." The United States Supreme Court found it "purely conjectural" that these consequences would occur, but that "even if such . . . consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." (*Id.,* at pp. 442-443 [4 L.Ed.2d at pp. 1321-1322].) The court also noted that "Congress' legitimate right to investigate is not affected by the fact that the information disclosed at the investigation may also be used in a subsequent criminal prosecution." (*Id.,* at p. 443, fn. 19 [4 L.Ed.2d at p. 1322].) If an investigatory agency does not become an adjudicatory body because its results may form the basis of a criminal prosecution, then the fact that the Board's findings may indirectly lead to a physician losing his license to practice medicine does not deprive the Board of its investigatory status.

Our conclusion that the Board's function pursuant to section 2292 is investigatory rather than adjudicative is bolstered by the statute's legislative intent. (See *Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1249 [218 Cal.Rptr. 772]; *Noroian* v. *Department of Administration* (1970) 11 Cal.App.3d 651, 654-655 [89 Cal.Rptr. 889]; see also *Estate of Ryan* (1943) 21 Cal.2d 498, 513 [133 P.2d 626].) Legislative committee reports state clearly that the professional competency examination was intended to serve as an investigative tool for the Board. (See Sen. Com. on Health and Welfare, Staff Analysis of Sen. Bill No. 109 (1983); Assem. Health Com. Rep. on Sen. Bill No. 109 (1983); Sen. Democratic Caucus Rep. on Sen. Bill No. 109 (1983); Sen. Republican Caucus Analysis of Sen. Bill No. 109 (1983).) Before this statute was enacted, the Board decided whether to file a formal accusation against a physician based only on information about specific cases known to the Board. In some instances, an accusation could have been avoided if an examination allowed the physician's peers to assess his or her competency. In other instances, an incompetent physician could have been allowed to continue in practice because available evidence, while serious, would not support an accusation. The professional competency examination was viewed as a mechanism to allow the Board to pursue appropriate cases while protecting the physician's rights. (See Sen. Com. on Health and Welfare, Staff Analysis of Sen. Bill No. 109 (1983).)

Having reviewed the statute and its investigatory purpose, we now turn to Smith's two constitutional claims—that section 2292 violates equal protection and due process under both the federal and state Constitutions.

### III. EQUAL PROTECTION

■ To be consistent with equal protection, persons similarly situated with respect to the legitimate purpose of a law are entitled to receive like treatment. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 502 [96 Cal.Rptr. 553, 487 P.2d 1193].) ■ On appeal, Smith contends that the procedure codified in section 2292 violates his federal and state constitutional rights to equal protection by denying a hearing to some physicians and granting it to others at the Board's discretion. (See U.S. Const., Amend. XIV; Cal. Const., art. I, § 7, subd. (a), art. IV, § 16, subd. (a).) As federal and state equal protection rights are substantially equivalent, we analyze this matter in a unified fashion. (*People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at p. 502, fn. 23; *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 420, fn. 7.)

■ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re*

*Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) ██ However, subdivision (d) of section 2292 does not adopt any classification at all. This statute does not set forth criteria on which any classification could be based; it merely vests the Board with discretion to grant a hearing. Neither does the record suggest that when the Board applies this provision, it discriminates against certain physicians. Smith's equal protection challenge fails.

Smith also appears to challenge this statute as "standardless" because it does not set forth the criteria to be used to determine who receives a hearing and who does not. Although section 2292 does not expressly state it, the wording of the statute implies the Board has discretion to conduct a formal hearing if the Board determines that this would assist it in its reasonable cause determination. This discretion may not be exercised in an arbitrary fashion without exposing the Board to a judicial challenge for abuse of its discretion. (See *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424; *Noguchi* v. *Civil Service Com.* (1986) 187 Cal.App.3d 1521, 1545 [232 Cal.Rptr. 394]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 277, pp. 287-289.)

We are satisfied that the Board did not abuse its discretion. The petition and opposition filed in this case clearly establish reasonable cause. The petition sets out five separate case histories of patients Smith is alleged to have improperly treated. The detailed histories fill all but three pages of the 16-page petition. The case histories demonstrate that Smith's decisions about when to subject patients to invasive procedures were questionable, at best. Two lengthy letters from outside medical consultants concurring with the conclusions of the Board's medical consultant are attached to the petition. The bulk of Smith's opposition takes the form of a general denial, an assertion that he is presently able to practice medicine with reasonable skill and safety to patients, and a number of procedural objections. His only specific, substantive challenge to the petition is the initial opinion of a medical consultant that Smith's conduct did not constitute malpractice. Even this minimal support for Smith's position is undermined by an admission from this would-be consultant that he may not be the best-qualified person to serve as consultant in this matter. The only other documents filed with Smith's opposition were 12 rather general letters of recommendation. The opposition papers did not raise any serious substantive challenge to the accuracy of the petition's allegations.

## IV. PROCEDURAL DUE PROCESS

██ Procedural due process requires notice, confrontation, and a full hearing whenever state action significantly impairs an individual's freedom to pursue a private occupation. (*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162,

172 [65 Cal.Rptr. 297, 436 P.2d 297].) Smith contends that the Board denied him his federal and state constitutional due process rights by not affording him the right to a hearing before being ordered to undergo the professional competency examination. (See U.S. Const., Amend. XIV; Cal. Const., art. I, §§ 7, subd. (a), 15.)

## A.  Federal Constitutional Analysis

Under federal constitutional analysis, Smith must first establish that the due process clause applies by showing a protected liberty or property interest. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 496, 92 S.Ct. 2593]; *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 81, fn. 12 [177 Cal.Rptr. 566, 634 P.2d 917]; see U.S. Const., Amend. XIV [forbidding deprivation of "life, liberty, or property" without due process].) Smith makes two claims.

First, he contends that the Board's action deprived him of the property interest represented by his license to practice medicine. Unquestionably, a physician has a vested property right in his or her medical license, once acquired. (See *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396 [188 Cal.Rptr. 891, 657 P.2d 383].) However, in this case, the Board's proceedings and order do not jeopardize this property interest. The proceedings were conducted to determine whether there was reasonable cause to believe that Smith was an incompetent physician and resulted in an order compelling him to undergo an examination to establish this fact. It was not a disciplinary proceeding and Smith's license was not immediately at stake. (See part II-B, *ante.*) Until a formal accusation is filed against a physician, his or her license is valid. (See § 2227, subds. (a), (b); see also *Wood* v. *Superior Court, supra,* 166 Cal.App.3d at p. 1141.) Once an accusation is filed, the physician enjoys the protection of a full range of due process rights. (§§ 2230, 2293, subd. (c); see Gov. Code, §§ 11500-11528.)

Second, Smith claims that he has a liberty interest at stake—the right to be free not to spend his time preparing for a professional competency examination. As Smith points out, courts have not defined the concept of liberty with exactness. The United States Supreme Court has indicated that "liberty" is " 'not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of [one's] own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free [people].' " (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 572 [33 L.Ed.2d 548, 558,92 S.Ct. 2701], quoting *Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042,

1045, 43 S.Ct. 625, 29 A.L.R. 1446].) Although the concept of liberty is "broad indeed," (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 572 [33 L.Ed.2d at p. 558]) we are satisfied that to require a physician, reasonably suspected of incompetency, to undergo an oral examination does not violate a "liberty" interest. Smith had no federal due process rights at stake at the reasonable cause proceeding.

B. *State Constitutional Analysis*

State due process analysis differs from that conducted pursuant to the federal due process clause. ■ Under our state Constitution, Smith need not establish a property or liberty interest as a prerequisite to invoking due process protection. (See *Schultz* v. *Regents of University of California* (1984) 160 Cal.App.3d 768, 782 [206 Cal.Rptr. 910]; see also *People* v. *Ramirez* (1979) 25 Cal.3d 260, 264 [158 Cal.Rptr. 316, 599 P.2d 622].) Instead, the extent to which procedural due process is available depends on a careful weighing of the private and governmental interests involved. The procedures that are constitutionally required are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process. More specifically, " 'identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 434 [166 Cal.Rptr. 149, 613 P.2d 210], quoting *People* v. *Ramirez, supra,* 25 Cal.3d at p. 269; *Schultz* v. *Regents of University of California, supra,* 160 Cal.App.3d at p. 782, fn. 8; see also Cal. Const., art. I, §§ 7, subd. (a), 15.)

The first factor is the private interest that will be affected by the official action. ■ Smith claims two interests at stake—his right to practice medicine and his right to be free from the need to prepare for the Board-ordered professional competency examination. As we have previously discussed, Smith's license to practice medicine is not impaired by this investigatory proceeding. (See part IV-A, *ante.*) However, the fact that the Board's order may lead ultimately to license revocation, if Smith refuses to take the examination or twice fails it, constitutes an interest affected by the official action, however attenuated.

The risk of erroneous deprivation of these interests because the Board failed to grant a formal hearing is remote. If a physician loses his or her license after the Board orders an examination to be conducted, that revocation would be the result of the physician's demonstrated incompetence or his or her refusal to comply with the Board's order—not from the lack of an opportunity to address the Board at the reasonable cause hearing. The procedural safeguards that the statutory scheme requires later in the process are sufficient to protect physicians without imposing additional requirements at this investigatory stage.

The next factor is the individual's interest in being informed of the nature, grounds, and consequences of official action and in enabling such persons to present their side of the story before a responsible government official. The statutory scheme requires the Board to provide notice of the petition, and requires the petition to set forth the facts and circumstances that led to the suspicion of reasonable cause. (§ 2292, subd. (b).)

Finally, we must weigh the government's interest in the proceeding, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. The legislative history of section 2292 makes it clear that this statute was intended to provide the Board with an investigative tool, not a disciplinary one. (See part II-B, *ante.*) The United States Supreme Court has held that due process varies according to specific factual contexts. When government agencies adjudicate or make binding decisions that directly affect the legal rights of individuals, those agencies must use procedures traditionally associated with the judicial process. On the other hand, when government action does not constitute an adjudication, such as when a general fact-finding investigation is being conducted, it is not necessary to use the full panoply of judicial procedures. (*Hannah* v. *Larche, supra,* 363 U.S. at p. 442 [4 L.Ed.2d at p. 1321].) In the proceeding authorized by section 2292, full judicial due process is not constitutionally mandated.

The full range of procedural due process rights that Smith urges us to require would impose great fiscal and administrative burdens on this process. "[T]he investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings . . . . Fact-finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. . . . This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts." (*Hannah* v. *Larche, supra,* 363 U.S. at pp. 443-444, fn. omitted [4 L.Ed.2d at p. 1322].)

Balancing Smith's private interests against the Board's interests, we are satisfied that the state constitutional due process clause does not require the imposition of the full range of due process rights at a reasonable cause proceeding conducted pursuant to section 2292.

## V. FINDINGS

■■ ■■■■ Finally, Smith claims that the administrative process was fatally flawed because the Board did not make findings to support its order.[5] The soundness of this claim depends on the validity of Smith's due process contention, which we reject. (See part IV, *ante*.) As such, this contention is also meritless.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied July 15, 1988, and appellant's petition for review by the Supreme Court was denied September 15, 1988.

---

[5] For the first time in his closing brief, Smith suggests that the examination violates his constitutional right to privacy, that section 2292 may be void for vagueness, and that the Board may use section 2292 rather than filing.a formal accusation in order to avoid the procedural due process requirements that attach to such a formal proceeding. As it is unfair for an appellant to raise issues for the first time on appeal in a reply brief, we will not address them. (See *Sunseri* v. *Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559, 562, fn. 4 [230 Cal.Rptr. 23]; *Durham* v. *City of Los Angeles* (1979) 91 Cal.App.3d 567, 571, fn. 2 [154 Cal.Rptr. 243] [constitutional claim]; *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 609 [94 Cal.Rptr. 200]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, pp. 484-485.)

In light of our conclusion on the merits, we need not consider Smith's final contention that he is entitled to reasonable attorney fees for contesting an unconstitutional statute.