[No. G031326. Fourth Dist., Div. Three. Jan. 28, 2005.]

DONALD COOK, Plaintiff and Respondent, v.
CITY OF BUENA PARK, Defendant and Appellant.

COUNSEL

Richards, Watson & Gershon, Gregory M. Kunert, Chandra Gehri Spencer and Ginetta L. Giovinco for Defendant and Appellant.

Alvarez-Glasman & Colvin, Arnold M. Alvarez-Glasman and Mathew M. Gorman for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Law Office of Ron Talmo, Ron Talmo; Law Offices of Russell Shields and Russell Shields for Plaintiff and Respondent.

Heidi P. Poppe for California Apartment Association as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**ARONSON, J.—** ▉ Donald Cook challenges a City of Buena Park (City) ordinance obliging landlords to undertake eviction proceedings against "all occupants" of a rental unit when the chief of police suspects a tenant has engaged in or permitted illegal drug activity, gang-related crime, or a drug-related nuisance in or near the rental property. Because the ordinance imposes on landlords a substantial risk of erroneous deprivation of property rights through compelled eviction litigation, unwarranted fines and penalties, and countersuits by tenants, we hold the ordinance violates procedural due process. We conclude the procedures employed by the ordinance are constitutionally infirm in three respects: first, the notice requiring the landlord to institute unlawful detainer proceedings provides insufficient information to prosecute the action; second, the 10-day period within which the landlord must commence eviction is too short; and finally, the ordinance *requires* the landlord to prevail in the eviction action or face fines, penalties, a lien on his or her property, and even misdemeanor punishment. In view of these failings, we affirm the trial court's judgment striking down the ordinance as unconstitutional.

I

FACTUAL AND PROCEDURAL BACKGROUND

Cook rented an apartment to Steve Bicksler beginning in 1997. On August 5, 2000, police cited Bicksler's roommate, Douglas Dixon, for possession of drug paraphernalia in violation of Health and Safety Code section 11364. Dixon thereafter participated in California's drug treatment diversion program, under which a " 'defendant's plea of guilty pursuant to this chapter shall not constitute a conviction for any purpose . . . .' " (*People v. Laino* (2004) 32 Cal.4th 878, 897 [11 Cal.Rptr.3d 723, 87 P.3d 27], quoting Pen. Code, § 1000.1, subd. (d).) On August 22, 2000, Cook received a letter from Buena Park Police Chief Richard M. Tefank notifying him of Dixon's citation. The letter stated in boldface type, "**You may use this information to take whatever action you deem necessary.**" On September 27, 2000, Cook received another letter from Tefank ordering him "to take action in the form of a three-day Notice to Quit, a thirty-day Notice to Vacate, or other legal remedies as required by any written rental contract with the above-named tenant(s), within ten (10) business days and to diligently prosecute such actions," in accordance with the City's "Narcotics and Gang-Related Crime Eviction Program." (Buena Park Municipal Code (BPMC), §§ 8.48.010–8.48.070 (the ordinance).)

The ordinance provides that landlords "shall not cause or knowingly permit: [¶] A. Any premises under his or her control to be used or maintained

for any illegal drug activity, gang-related crime, or in such manner as to constitute a drug-related nuisance; or [¶] B. Any tenant to use or occupy premises under the landlord's control, if the tenant commits, permits, maintains or is involved in any illegal drug activity, gang-related crime, or drug-related nuisance on the premises." (BPMC, § 8.48.020.)

If the chief of police determines the landlord has violated this provision, he may send written notice to the landlord "identify[ing] the offending tenant(s), [the] unit number if applicable, . . . the specific violation(s), and shall state the date(s) and time(s) of any observed criminal activity and any resulting arrest(s), and shall further state that as to such tenant(s) the landlord is required to serve and diligently prosecute either a three day notice to quit or a thirty day notice to vacate." (BPMC, § 8.48.050(B).) The ordinance defines "diligently prosecute" to mean "such prosecution by the landlord as is necessary to cause the subject rental unit to be completely vacated by all occupants." (*Ibid.*)

The ordinance also provides for "Recovery of possession by [the] landlord" as follows: "Grounds for Eviction. Notwithstanding any provision of the Buena Park City Code to the contrary, a landlord may bring an action to recover possession of a rental unit upon any of the following grounds: [¶] 1. The tenant is committing or permitting to exist any illegal drug activity, gang-related crime, or drug-related nuisance on the premises; or [¶] 2. The tenant has been convicted of a crime wherein the underlying offense involves illegal drug activity, drug-related nuisance activity or a gang-related crime on the premises." (BPMC, § 8.48.040.)

The landlord may appeal the chief of police's determination that he or she is in violation of the ordinance, provided the appeal is taken within 10 days of the notice of violation. The appeal is heard by the city manager, "who shall cause the matter to be set for hearing. Written notice of the date and time of such hearing shall be served by first class mail addressed to the landlord's last known business address. Following the conclusion of the hearing, the city manager may affirm, reverse or reverse subject to conditions, the police chief's determination of violation. The city manager's decision shall be based upon written findings and shall be final." (BPMC, § 8.48.050(C).)

If the landlord fails to comply within 10 business days of the police chief's notice or to file an appeal of the notice to the city manager within 10 days, "then the city may file an action for injunctive relief or utilize any other remedy provided by law to compel compliance, including but not limited to, all remedies available to abate a nuisance." (BPMC, § 8.48.050(A).) Similarly, the City "may immediately proceed" to utilize the same remedies if the landlord's appeal is denied. (BPMC, § 8.48.050(D).) A landlord's first three

violations of the ordinance within a 12-month period constitutes an infraction subject to varying fines, and the fourth violation is a misdemeanor. (BPMC, § 8.48.070.)

On October 3, 2000, within 10 days of receiving the chief of police's notice, Cook appealed to the city manager. The city manager denied the appeal and Cook sought relief in the Orange County Superior Court, challenging the constitutionality of the ordinance. Cook and the City filed cross-motions for summary judgment on whether the ordinance violated procedural due process, substantive due process, equal protection, free speech, freedom of contract, or the "inalienable rights" and jury trial clauses of the state Constitution (Cal. Const., art. I, §§ 1, 16). The summary judgment motions also contested whether the ordinance was unconstitutionally vague or overbroad, an illegal taking of property, or preempted by provisions of state law related to controlled substance regulation (Health & Saf. Code, § 11364), drug diversion (Pen. Code, § 1000), and, as phrased by Cook, the "Unlawful Detainer statutes." The trial court granted summary judgment in favor of Cook, ruling the ordinance violated substantive due process and was overbroad, "sweep[ing] up . . . the innocent tenant, the landlord, and the guilty tenant into the punitive remedy of eviction." The court permanently enjoined enforcement of the ordinance, and the City now appeals.

II

DISCUSSION

The City argues the trial court erred in concluding the ordinance violates substantive due process. Cook contends vaguely that "[s]ubstantive due process is implicated by violation of the rights set forth throughout the pleadings . . . ." As best we can discern, Cook suggests that within the penumbra of "rights includ[ing] enjoying and possessing property and privacy, and freedom of association," there lies a substantive due process right guarding against the ordinance's terms. "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' [citation], or interferes with rights 'implicit in the concept of ordered liberty,' [citation]." (*United States v. Salerno* (1987) 481 U.S. 739, 746 [95 L.Ed.2d 697, 107 S.Ct. 2095] [quoting *Rochin v. California* (1952) 342 U.S. 165, 172 [96 L.Ed. 183, 72 S.Ct. 205], and *Palko v. Connecticut* (1937) 302 U.S. 319, 325–326 [82 L.Ed. 288, 58 S.Ct. 149], respectively].) As observed by the high court, "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended" (*Collins v. Harker Heights* (1992) 503 U.S. 115, 125 [117 L.Ed.2d 261, 112 S.Ct. 1061]), and we therefore look first to see whether the appeal may be resolved on other grounds.

We agree with Cook that the ordinance violates his right to procedural due process under the federal Constitution. (U.S. Const., 14th Amend.) As a threshold matter, his due process claim depends on having a protected life, liberty, or property interest at stake. (*Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532, 538 [84 L.Ed.2d 494, 105 S.Ct. 1487] (*Loudermill*); compare *Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 327 [248 Cal.Rptr. 704] [noting one "need not establish a property or liberty interest as a prerequisite to invoking due process protection" under Cal. Const., art. I, § 7, subd. (a)].) The City argues Cook fails this requirement because no landlord "has a fundamental right to conduct business in a manner that creates, maintains or constitutes a nuisance." But the City's argument is conclusory, assuming that which must be proved. In other words, whether the rental property constitutes a nuisance is precisely the question to be determined by the unlawful detainer proceedings required by the ordinance. (See Code Civ. Proc., § 1161, subd. (4) [providing for eviction of a tenant who commits a nuisance].)

More to the point, as noted by amicus curiae California Apartment Association (CAA), the landlord undoubtedly has a property interest in collecting rent under the lease with the tenant, and in avoiding the lien provision and fines imposed by the ordinance. Additionally, because the ordinance compels the landlord to undertake eviction proceedings, the costs associated with such litigation directly impact the landlord financially. In short, principles of due process apply because the ordinance affects substantial property interests.

■ "[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.' [Citation.]" (*Loudermill, supra*, 470 U.S. at p. 541.) "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893].)

Here, we have identified the landlord's important property interests, but the City's interest in combating "illegal drug activity, drug-related nuisance activity [and] gang-related crime on the premises" (BPMC, § 8.48.040(A)(2)) is equally, if not more compelling. Neither Cook nor amicus curiae CAA

disputes that the City's articulated goal of "protecting its residents, families and homes against a growing prevalence of drugs and gang-related activities" is an appropriate use of its police power. (See *Northern Inyo Hosp. v. Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23 [112 Cal.Rptr. 872] ["there is no vested right to conduct a business free of reasonable governmental rules and regulations"].) The question is whether, given the City's acknowledged and compelling interests, the risk of erroneous deprivation of the landlord's interests under the ordinance's procedures rises to a constitutional dimension. We hold that it does.

The ordinance is usefully evaluated in light of a similar Health and Safety Code provision establishing a pilot program for unlawful detainer actions in portions of Alameda, Los Angeles, and San Diego Counties. (Health & Saf. Code, § 11571.1.) The pilot program provides that "the city prosecutor or city attorney may file, in the name of the people, an action for unlawful detainer against any person who is in violation of the nuisance or illegal purpose provisions of [Code Civ. Proc., § 1161, subd. (4)], with respect to a controlled substance purpose."[1] (Health & Saf. Code, § 11571.1, subd. (a).) The city's action "shall be based upon an arrest report or on another action or report by a regulatory or law enforcement agency . . . ." (*Ibid.*)

But before the city prosecutor or attorney may file the action, notice must first be given to the property owner requiring the owner to pursue the unlawful detainer remedy under Code of Civil Procedure section 1161, subdivision (4). (Health & Saf. Code, § 11571.1, subd. (a)(1)(A).) The notice must include "sufficient documentation establishing a violation of the nuisance or illegal purpose provisions of" Code of Civil Procedure section 1161, subdivision (4). (Health & Saf. Code, § 11571.1, subd. (a)(1)(B).) The predicate nuisance or illegal purpose must be "documented by the observations of a peace officer." (*Id.,* subd. (c).) The owner has 30 days to commence the action. (*Id.,* subd. (a)(1)(A).) If the owner is concerned about retaliation by the tenant or provides a written explanation of any other "safety-related reasons," he or she may decline to pursue the eviction and assign to the city "the right to bring an unlawful detainer action against the tenant." (*Id.,* subd. (a)(1)(D).) If the owner fails to file the action or respond to the city's notice,

---

[1] Code of Civil Procedure section 1161 describes the circumstances under which the unlawful detainer remedy is available, and subdivision (4) specifies it may be utilized to evict a tenant "maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using the premises for an unlawful purpose . . . ." Subdivision (4) further specifies that "a person who illegally sells a controlled substance upon the premises or uses the premises to further that purpose, shall be deemed to have committed a nuisance upon the premises."

the city may join the landlord as a defendant in an action filed by the city, and recover its costs and attorney fees from the landlord upon prevailing. (*Id.*, subd. (a)(2).) The pilot program provides that "[n]othing in this article shall prevent a tenant from receiving relief against a forfeiture of a lease pursuant to Section 1179 of the Code of Civil Procedure."[2] (Health & Saf. Code, § 11571.1, subd. (a)(5).) The program further specifies that, "[i]n any proceeding brought under this section, the court may, upon a showing of good cause, issue a partial eviction . . . ." (*Id.*, subd. (b).)

We express no opinion on the constitutionality of the pilot program. Set against its example, however, the inadequacies of the ordinance stand out in bold relief. The ordinance violates procedural due process, creating an unreasonably high risk of erroneous deprivation of the landlord's property interests in three particular respects.

First, the notice provided by the chief of police is insufficient to assure a reasonable chance of success in the unlawful detainer action, thus exposing the landlord to unwarranted litigation costs, as well as the possibility of a tenant countersuit for forcible entry if the landlord has attempted to take possession, or malicious prosecution or abuse of process if the owner lacked probable cause to bring the action. The pilot program requires notice to the owner that includes "sufficient documentation establishing a violation of the nuisance or illegal purpose provisions of" the unlawful detainer statute. (Health & Saf. Code, § 11571.1, subd. (a)(1)(B).) In contrast, the ordinance only requires that the police chief's notice "identify the offending tenant(s), [the] unit number if applicable, . . . the specific violation(s), and . . . the date(s) and times(s) of any observed criminal activity and any resulting arrest(s) . . . ." (BPMC, § 8.48.050(B).)

The terms of notice under the ordinance fail to require sufficient specificity to aid the landlord in the unlawful detainer action. The alleged offender's identity, unit number, and the mere "date(s) and time(s)" of any alleged criminal activity or arrest do nothing to establish a nuisance or illegal purpose. Notice of the "specific violation(s)" presumably alerts the landlord which prong of the ordinance the City is relying upon, i.e., "illegal drug activity, gang-related crime, or drug related nuisance," but the ordinance requires no specificity as to these activities that would aid the landlord in making his unlawful detainer case.

---

[2] Code of Civil Procedure section 1179 provides, in pertinent part: "The court may relieve a tenant against forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore him or her to his or her former estate or tenancy, in case of hardship . . . . The court has the discretion to relieve any person against forfeiture on its own motion."

Simply put, there is no requirement that the purportedly "observed criminal activity and any resulting arrest(s)" be described. (BPMC, § 8.48.050(B).) We do *not* mean to suggest that to satisfy due process the City's allegation of proscribed conduct must be "documented by the observations of a peace officer," as required by the pilot program. (Health & Saf. Code, § 11571.1, subd. (c).) Rather, the documented observations of any witness willing to testify, such as a neighbor or an informant, would supply probable cause for the landlord's unlawful detainer action and give the landlord a chance at success in the action. As amicus curiae CAA points out, requiring the City to provide this information to the landlord would not unduly increase any administrative burden under *Matthews* because "it is the same information that the City would have to gather to file its own action for nuisance, and presumably [is the same] information the police chief . . . used as the basis for notice."

The ordinance's second, and related, failing is its onerous requirement that the landlord institute the unlawful detainer action within just 10 days of receiving notice from the chief of police. This is not nearly enough time for the owner to bolster his evidence if the City's notice is lacking or to otherwise investigate the matter and develop his case. We note that the pilot program's notice period was recently increased from 15 days to 30 days. Since the pilot program is not under review, we express no opinion on whether 15 days or 30 days is constitutionally adequate. It suffices to say that 10 days is far too short.

Finally, the ordinance violates due process because it *requires* the landlord to prevail in the unlawful detainer action. The owner must "diligently prosecute" the action, and the ordinance defines that term to mean "such prosecution by the landlord as is necessary to cause the subject rental unit to be completely vacated by all occupants." (BPMC, § 8.48.050(B).) If the landlord fails, even as a result of inadequate documentation provided by the City, the penalties for an owner "violating any provision of this chapter or failing to comply with any of its requirements" include fines up to five hundred dollars, misdemeanor punishment for a fourth violation, and a lien against the property and "a civil penalty in the maximum amount permitted by law" if court action is required to enforce the ordinance. (BPMC, §§ 8.48.050(E), 8.48.060, 8.48.070.) The City defends its procedures, noting that before instituting the unlawful detainer action, the landlord may appeal to the city manager the chief of police's determination that the ordinance

applies. But the ordinance provides no guidance to the city manager regarding the adequacy of the police chief's notice and, in any event, the landlord who does not succeed in a court of law would take little comfort from the city manager's contrary assessment of the merits.

For all of the foregoing reasons, the ordinance violates procedural due process and cannot stand.[3]

## III

## DISPOSITION

The judgment is affirmed.

Ikola, J., Bedsworth, Acting P. J., concurred.

**BEDSWORTH, Acting P. J.,** Concurring.—I share the misgivings of my colleagues about the procedural due process problems of this ordinance. I fully agree it does not pass constitutional muster in regard to those considerations. But I would be remiss if I did not also express my concern the ordinance may have more carcinogenic problems than we discuss in this opinion.

I am not yet convinced this ordinance does not suffer from other, more fundamental constitutional infirmities than procedural due process. I am concerned, inter alia, about its sweeping requirement that *all* occupants of the premises must be evicted for the sins of one, its disparate treatment of property owners and renters (our record reflects no nuisance abatement efforts against the *owners* of property for similar crimes), and the Damoclean substantive due process issue which hangs over this statutory scheme.

---

[3] Because we hold the ordinance must be struck down for violation of procedural due process, we need not reach the City's plethora of arguments justifying the ordinance against Cook's other claims of constitutional infirmity. Those questions are now moot.

Since we have resolved the matter on other grounds, I do not know how those concerns will play out. I may yet become convinced they too are also resolvable. But if the city chooses to revise the ordinance to address its procedural due process problems, I encourage it to give more thought to these other issues as well.