Filed 11/21/17; Certified for Publication 12/4/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT P. FETTGATHER, | C074166 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201280001206CUWMGDS) |
| v. | |
| BOARD OF PSYCHOLOGY, | |
| Defendant and Respondent. | |

Appellant Dr. Robert P. Fettgather (Fettgather) appeals from an order of the trial court denying his petition for writ of administrative mandamus. His petition challenges the revocation of his license to practice psychology by Respondent California Board of Psychology (the Board). The trial court denied Fettgather's petition on the ground that the only relevant inquiry before the Board was whether Fettgather failed to comply with an order for an examination under Business and Professions Code section 820; undesignated section references will be to this code. Further, the trial court found that

1

"[t]he evidence in the record unquestionably establishes that petitioner failed to submit to the examination that had been ordered in this case."

Fettgather appeals arguing he should be permitted to challenge the merits underlying a section 820 order before he is required to comply with that order. He also argues that revocation of his license pursuant to section 821 for his failure to undergo a section 820 examination is unlawful.

We affirm the judgment of the lower court. We hold that the Board is not required to show good cause for a section 820 order nor is a licensee entitled to challenge the basis for the order before submitting to the required examination. It follows that the question of good cause supporting such an order is not relevant to a revocation of Fettgather's license for noncompliance with the section 820 order. This strikes the appropriate balance between the public and private interests as explained herein.

FACTS AND PROCEEDINGS

Fettgather obtained his California license to practice psychology in 1990.

On April 28, 2011, Fettgather was notified by the Board it was investigating complaints against him concerning his behavior and communications with patients. Board investigator Jeremy Singleton requested that Fettgather contact Singleton to schedule an interview.

On May 4, Singleton and Fettgather spoke at length on the telephone but Fettgather would not agree to an interview.

On May 13, Fettgather was personally served with an investigational subpoena to appear and give testimony on June 6. Fettgather did not comply with the subpoena.

A second subpoena for testimony was issued for an interview on July 18, and was served upon Fettgather's counsel, who told the Board that Fettgather would not appear for the interview.

2

On August 8, 2011, a petition to compel a psychiatric evaluation of Fettgather was filed pursuant to section 820. On August 15, 2011, the Board issued an order compelling Fettgather to submit to a psychiatric examination within 30 days. The Board issued an amended order on September 14, 2011, extending the deadline for Fettgather's compliance until October 17 in order to allow the investigative interview to precede the examination. This interview took place on September 26, 2011.

Thereafter, Fettgather's neurologist wrote the Board on October 15, 2011, arguing that a psychiatric evaluation of Fettgather was not needed.

Fettgather did not submit to the ordered evaluation, nor did he file an appeal thereof.

On October 25, 2011, the Board filed an accusation against Fettgather for discipline arising from his failure to comply with the Board's section 820 order.

On May 14, 2012, an administrative law judge (ALJ) conducted a hearing on the accusation and issued a recommendation that the Board revoke Fettgather's license pursuant to sections 821 and 2960 for failure to comply with an order for a mental examination under section 820. In so doing, the ALJ found that Fettgather "willfully failed to comply with an Order of the Board and gave no indication that he will do so in the future. Compliance with Board Orders is essential for public protection. In these circumstances, revocation is the appropriate level of discipline." The ALJ refused to allow the submission of evidence concerning the lack of good cause for the order compelling the examination.

The Board adopted the ALJ's recommended revocation of Fettgather's license on June 28, 2012; the revocation was to become effective on July 27, 2012. Thereafter, Fettgather filed his verified petition for writ of administrative mandamus on July 24, 2012, and the lower court granted his request for a stay of the revocation of his license on July 27, 2012.

3

On October 16, 2012, the Board moved to vacate the stay of revocation of Fettgather's license in light of *Lee v. Board of Registered Nursing* (2012) 209 Cal.App.4th 793 (*Lee*). The court held a hearing on this motion on January 4, 2013, ultimately ordering the stay be lifted. Fettgather's license was thereafter revoked.

The parties briefed Fettgather's motion for writ relief, and the court held a hearing on March 1, 2013. On May 9, 2013, the court issued an order denying the requested relief. Relying on *Lee, supra,* 209 Cal.App.4th 793, the trial court found the only facts relevant to Fettgather's challenge to the revocation of his license for failure to submit to a psychiatric evaluation under section 820 were whether he had submitted to the ordered evaluation. It noted it was undisputed that Fettgather did not submit to that evaluation and whether there was good cause supporting that order was not relevant. Further, the trial court found that section 820 did not violate federal or state constitutional due process or privacy interests, ultimately concluding "Respondent's decision revoking petitioner's license for failing to comply with the order directing him to submit to a psychological examination pursuant to Business and Professions Code section 820 is supported by the evidence in the record and is in accord with controlling appellate authority."

Fettgather challenges the trial court on a number of grounds, many of which we need not recount here for reasons set forth below. While many of his arguments are difficult to discern, Fettgather appears to argue that he should have been afforded the opportunity to challenge the propriety of the Board's order requiring him to submit to a psychological evaluation under section 820 at the Board's revocation hearing, despite his noncompliance with that order. Specifically, he argues that his rights to due process of law and equal protection were violated as a result of the ALJ limiting that proceeding to a determination of whether he had complied with what he views as an unconstitutional order obtained without good cause.

He further argues this court should "overturn" *Lee, supra,* 209 Cal.App.4th 793, which was relied upon by the trial court in upholding the Board's license revocation

4

order.  While we do not have the authority to "overturn" *Lee*, we are not bound by that decision.

We will not address arguments not separately stated under a separate heading as noncompliant with California Rules of Court, rule 8.204(a)(1)(B).  (*See T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, review denied (2011) 2011 Cal. LEXIS 3990 [declining to consider undeveloped argument not delineated under separate heading].)

DISCUSSION

I

*Standard of Review*

A trial court exercises independent judgment in its review of an agency's revocation of a professional license.  (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 573-574.)  On appeal, we review the trial court's decision for substantial evidence, resolving any conflicts in favor of the trial court's judgment.  (*Id*. at pp. 574-575.)  Questions of law, however, are subject to de novo review.  (*Id*. at p. 575.)  Compliance with the constitution presents a question of law.  (*Tafti v. County of Tulare* (2011) 198 Cal.App.4th 891, 896.)

II

*The Statutory Scheme*

The Board is entrusted with enforcing and administering the provisions of the Business and Professions Code governing psychologists.  (§ 2920.)  "Protection of the public shall be the highest priority for the Board of Psychology in exercising its licensing, regulatory, and disciplinary functions.  Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."  (§ 2920.1.)

5

The Board is authorized to conduct investigations pursuant to section 820 in order to ensure practitioners are, among other things, of sound mental health.  (§ 820; 16 C.C.R. § 1380.4 [authorizing Board's executive officer to conduct examinations pursuant to section 820]; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 8-9 (*Arnett*) [citing *Brovelli v. Superior Court of Los Angeles County* (1961) 56 Cal.2d 524, 528 and *United States v. Morton Salt Co.* (1950) 338 U.S. 632, 642-43].)  Section 820 states in pertinent part:

"Whenever it appears that any person holding a license . . . may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency."  (§ 820.)

This report may be received as direct evidence in an accusation brought to revoke a license (§§ 820, 822, 826), but the function of obtaining it is investigatory.  (*Arnett, supra,* 14 Cal.4th at p. 9; *Kees v. Medical Board* (1992) 7 Cal.App.4th 1801, 1814 (*Kees*); *Alexander D. v. State Bd. of Dental Examiners* (1991) 231 Cal.App.3d 92, 97 (*Alexander D.*).)  Further, the Board is authorized to consider the report in closed session (§ 827), and the report itself remains confidential until an accusation is actually filed.  (§ 828.)  If an accusation is not filed, the report is kept confidential for a period of five years and thereafter destroyed if no new proceedings are initiated within that period of time.  (*Ibid*.)

"[F]ailure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's . . . license."  (§ 821.)  This is consistent with the Board's regulations, which find failure to more broadly cooperate with an investigation to be "unprofessional conduct" and section 2960, which recognizes the Board's right to revoke a license for "unprofessional conduct."  (§ 2960, subd. (k) ["unprofessional conduct" as including violations of regulations]; 16 C.C.R. § 1397.2,

6

subd. (c) ["unprofessional conduct" includes the failure to cooperate with a Board investigation].)

Nothing in the Business and Professions Code or associated regulations defines the requisite threshold for an order under section 820, which speaks of authorization for an order "[w]henever it appears" a person "may be unable to practice his or her profession safely because" that "ability to practice is impaired due to mental illness . . . " (§ 820.) Nor does the legislative history shed any light on the level of showing necessary for this inquiry. One court has noted that *repetitive* section 820 examinations "are permissible if there is a showing of good cause." (*Kees, supra,* 7 Cal.App.4th at p. 1814.) Another refused to reach the inquiry where the facts of the case established "reasonable cause" for the order. (See *Alexander D., supra,* 231 Cal.App.3d at p. 98.)

Fettgather requests we determine (1) what standard must be shown for an order under section 820 and (2) when a licensee may challenge that showing. Regarding the first issue, for the reasons that follow, we find, in accordance with the plain wording of the statute, that the Board may issue a section 820 order "whenever it appears" to the Board that a licensee may be unable to practice his profession due to impairment from mental illness or physical illness or physical illness affecting competency. Regarding the second, we need not reach that issue because Fettgather, in refusing to appear for the examination, did not take advantage of his right to a competency hearing (§ 822) and so the scope of the issues to be determined in such a hearing are not before us here. It is sufficient for us to hold that a licensee has no right to challenge the basis for a section 820 order before complying with that order.

7

III

*Due Process of Law*

Fettgather argues his right to due process of law under the United States and California Constitutions was violated when the Board revoked his license after an administrative hearing wherein he was not permitted to submit evidence challenging the propriety of the section 820 order. There was no violation of his right to due process of law.

A. The <u>U.S.</u> <u>Constitution</u>

The Fourteenth Amendment of the U.S. constitution prohibits state deprivation of "life, liberty, or property without due process of law." (*Dent v. West Virginia* (1889) 129 U.S. 114, 121.) Fettgather asserts the right to practice his profession is both a property right (*ibid*.) and a liberty right (*Conn v. Gabbert* (1999) 526 U.S. 286 that was impinged upon by the Board's actions.

It is settled that Fettgather's right to practice was not implicated by the order for a mental examination. (See *Arnett, supra,* 14 Cal.4th at p. 9; *Alexander D.*, *supra*, 231 Cal.App.3d at p. 97; see also *Kees*, *supra*, 7 Cal.App.4th at p. 1814 [construing investigational power of similar statute].) The order did not immediately threaten his license, but was merely an authorized administrative inquiry, falling squarely within the police power to protect the public. (See *Arnett*, at pp. 7-9; *Alexander D*., at p. 97.)

The question then becomes, was Fettgather's right to due process violated by the ALJ's refusal to allow him to challenge the *validity* of the section 820 order at the proceedings for revocation of his license pursuant to section 821's mandate that "failure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's . . . license." The court in *Lee, supra,* 209 Cal.App.4th 793 answered this question in the negative. We agree with *Lee*.

8

In *Lee*, the court was asked to decide whether the trial court erred in upholding the revocation of a nursing license for failure to comply with an order to undergo a mental health assessment pursuant to section 820. Fettgather suggests the *Lee* court only considered "whether substantial evidence supports the trial court's decision not to set aside the Board's revocation."

But taken in context, the *Lee* court's statement regarding a failure to comply shows that it was rejecting the argument Fettgather advances and evidence submitted on the merits of whether a mental fitness exam was warranted was irrelevant to a section 821 proceeding. (*Lee*, *supra*, 209 Cal.App.4th at pp. 797-798.) It determined such evidence would only be relevant if the appellant had actually submitted to the order. (*Id*. at p. 798.) Because she did not, all that was relevant to the propriety of the license revocation was her failure to comply with the order. (*Ibid*.) It separately determined on those facts that there was no violation of federal or state due process, nor privacy rights because the order at issue did not impair her right to practice and the "matters had not proceeded beyond the procedural." (*Ibid*.)

While Fettgather's interest in his license was ultimately implicated by the proceedings to revoke for failure to comply under section 821, as we explain more fully, *post*, we find the appropriate balance between the private and public interest is struck through requiring Fettgather to submit to the section 820 mental examination and challenge the results of that examination only after a formal accusation alleging mental illness is brought. (See *Mathews v. Eldridge* (1976) 424 U.S. 319, 333-335 [noting fluid nature of inquiry and articulating factors to be considered].)

B. The California Constitution

Fettgather argues he must be afforded the opportunity to challenge the section 820 order at a proceeding to revoke his license pursuant to section 821 and his inability to do so violated his right to due process under the California Constitution. For the same reasons that we reject his federal constitutional claim, we reject this one.

9

As noted, the issuance of a section 820 order for a mental competency exam does not impact Fettgather's right to practice (*Alexander D.*, *supra*, 231 Cal.App.3d at p. 98; *Lee*, *supra*, 209 Cal.App.4th at p. 798) and his right to privacy implicated by that order is adequately protected by the statutory mechanism that keeps the investigation confidential up until the filing of an accusation charging incompetency on the merits. (See §§ 827, 828; *Lee*, at p. 798; *Kees, supra,* 7 Cal.App.4th at pp. 1812-1814.)

Fettgather was fully informed of the basis for the investigation, was provided an opportunity to respond to the responsible government official, and was aware of the potential consequences of noncompliance with the section 820 order. That notwithstanding, Fettgather was uncooperative with attempts to investigate the claims that he was unfit, initially refusing to voluntarily submit to an interview, failing to comply with two subpoenaed investigational interviews, and finally providing information to investigators only on the condition that the interview would not be under oath. His repeated refusal to engage in the statutory process undermines his claim that he was deprived of due process of law.

Finally, the governmental interest involved in requiring compliance with a section 820 order is compelling. "Protection of the public shall be the highest priority for the Board of Psychology in exercising its licensing, regulatory, and disciplinary functions." (§ 2920.1.) Section 820 was enacted for the express purpose of creating a mechanism to ensure that the licensing agency had the power to revoke the license of healing arts professional who was mentally ill. (*Alexander D.*, *supra*, 231 Cal.App.3d at p. 97.) The actual ability to investigate whether the medical professional is indeed mentally ill is paramount to that call. That a revocation order may be issued suspending a license for noncompliance with a section 820 order in pending revocation proceedings further underscores the importance of this interest. (See Gov. Code, § 11529(a) ["The failure to comply with an order issued pursuant to Section 820 of the Business and Professions Code may constitute grounds to issue an interim suspension order under this section].)

10

Moreover, the government's interest would be severely impacted if licensees were permitted to delay investigations the licensee believed were unwarranted because it would unnecessarily delay the investigation and ultimate determination of mental fitness. Requiring compliance with a section 820 order, in fact, not only streamlines the procedure, but also protects a licentiate from groundless charges because it allows the Board to initially and confidentiality determine that mental state prior to the bringing of any accusation to revoke a license. (*Alexander D.*, *supra*, 231 Cal.App.3d at p. 98.) Because it is undisputed that Dr. Fettgather failed to comply with the section 820 order, he was not entitled to challenge the merits of the order at the revocation proceeding.

IV

*Equal Protection of the Law*

Fettgather asserts the ALJ's failure to allow him to challenge the section 820 order on the merits violates the equal protection clauses in the California and federal constitutions. We find his cursory statement pertaining to the California constitution ineffective to raise a State law equal protection claim. (Cal. Rules of Court, rule 8.204(a)(2)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793 [failure to provide reasoned argument and legal authority waives that argument].)

The only authority Fettgather cites in support of his federal equal protection claim is *Bush v. Gore* (2000) 531 U.S. 98. Fettgather's argument on this issue is sparse, but appears to be that an equal protection violation exists here on the basis that California law treats nonlicensed and licensed individuals differently because a nonlicensed person would not be subject to the Board's authority to compel a mental examination under section 820. We fail to see how this demonstrates a violation of equal protection, which requires that "persons similarly situated with respect to the legitimate purpose of a law are entitled to receive like treatment." (*Smith v. Bd. of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 324.) Individuals licensed by the State to provide mental health

11

care are not similarly situated to members of the general public.  As such, Fettgather's equal protection claim necessary fails.  (See *id*. at p. 325 [noting a meritorious equal protection claim would show "a classification that affects two or more similarly situated groups in an unequal manner"].)

V

*The Supremacy Clause*

Lastly, Fettgather invokes the federal Supremacy Clause in an apparent attempt to show that sections 820 and 821 are somehow preempted by federal law.  He utterly fails to develop that argument other than to invoke the Supremacy Clause itself and we will not consider it further.

DISPOSITION

The judgment of the trial court is affirmed.  The Board is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278.)


                                        HULL                , J.


We concur:


      RAYE             , P. J.


      MURRAY        , J.

Filed 12/4/17

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT P. FETTGATHER, | C074166 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201280001206CUWMGDS) |
| v. | |
| BOARD OF PSYCHOLOGY, | ORDER CERTIFYING OPNION FOR PARTIAL PUBLICATION |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny. Affirmed.

Law Offices of Bruce W. Ebert and Bruce W. Ebert for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria L. Castro, Senior Assistant Attorney General, Jane Zack Simon, Supervising Deputy Attorney General, Lawrence A. Mercer, Deputy Attorney General for Defendant and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts IV and V of the Discussion.

13

THE COURT:

The opinion in the above-entitled matter filed on November 21, 2017, was not certified for publication.

For good cause it now appears that Parts I, II, and III of the Discussion should be published in the Official Reports and it is so ordered.

BY THE COURT:

           RAYE           , P. J.

           HULL           , J.

           MURRAY           , J.

14