[No. A074922. First Dist., Div. Four. Dec. 26, 1996.]

GUSTAVO RODRIGUEZ, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent;
DORA ALVARENGA, Real Party in Interest and Respondent.

COUNSEL

Arlo H. Smith for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Richard F. Finn and Paul D. Gifford, Deputy Attorneys General, for Defendant and Respondent.

Grant & Sternberg, Robert L. Grant and Heidi A. Coad-Hermelin for Real Party in Interest and Respondent.

OPINION

**REARDON, J.**—In this case, we hold that the Commissioner of the Department of Real Estate does not violate a real estate broker's due process rights by suspending the broker's license as an automatic consequence of granting a defrauded client's claim for payment from the department's client recovery account. Current legal requirements of notice to the broker and an opportunity to submit written argument challenging the claim are sufficient to satisfy due process, despite the lack of any provision for a formal administrative hearing at which the licensee may offer evidence and cross-examine witnesses.

In the matter before us, the trial court denied appellant Gustavo Rodriguez's petition for a writ of administrative mandate, effectively allowing respondent Department of Real Estate to suspend his real estate broker's license. Rodriguez appeals, contending that (1) the automatic suspension provision of Business and Professions Code[1] section 10475 violates his right to due process; and (2) on statutory grounds, he was entitled to a full evidentiary hearing before his license was suspended. We affirm the judgment.

## I. FACTS

Appellant Gustavo Rodriguez is a real estate broker licensed by respondent Department of Real Estate. In 1989, Rodriguez negotiated a $20,000

---

[1]All statutory references are to the Business and Professions Code unless otherwise specified.

loan from real party in interest Dora Alvarenga to Ataulfo Briz, to be secured by a deed of trust. He did not disclose to Alvarenga that Briz was insolvent and he did not record a deed of trust against Briz's property. Alvarenga received some interest payments, but Briz defaulted on the principal of the loan when it came due a year later.

In 1991, Rodriguez negotiated a $12,000 loan from real party in interest Dora Alvarenga to Xavier Barrios, to be secured by a deed of trust. He did not disclose to Alvarenga that Barrios was insolvent and he did not record a deed of trust against Barrios's property. Alvarenga received some interest payments, but Barrios defaulted on the principal of the loan when it came due a year later.

In June 1992, Alvarenga filed suit against Briz. She learned that Briz had filed for chapter 11 bankruptcy a few days earlier. She filed a claim in a lawsuit in which Briz was the plaintiff, obtaining $6,143.73 from that source. She filed an adversary proceeding against Briz in bankruptcy court, obtaining a stipulated judgment for $21,450. The Briz judgment was to be paid on a monthly basis, but Briz soon filed for chapter 13 bankruptcy, preventing any further collection on that judgment. Alvarenga also filed suit against Barrios. In August 1992, she obtained a default judgment against him in the amount of $13,448.18. She collected $600-$700 from him, but has been unable to collect any more.

In December 1992, Alvarenga sued Rodriguez in state court, alleging, inter alia, that he made false representations about the solvency of Briz and Barrios and the security for the loans she made to them. In August 1993, she obtained a default judgment against Rodriguez for $52,715.95.

In November 1993, Rodriguez filed for chapter 11 bankruptcy in federal court. Alvarenga filed an adversary proceeding against him in January 1994 in federal bankruptcy court, alleging that his debts were nondischargeable in bankruptcy because money was obtained under false pretenses, by fraud, and by willful or malicious injury. She obtained a federal bankruptcy court judgment for $45,468 in damages and attorney fees, plus interest against Rodriguez in June 1994.[2]

In August 1994, Alvarenga applied to the department for payment from its real estate recovery account. Rodriguez was notified of her claim, objected to it, and submitted a written challenge to it. He was specifically notified that if Alvarenga's claim was paid from the account, his real estate license would

---

[2]Rodriguez moved for relief from default in federal bankruptcy court, but that was denied in January 1995.

be suspended until the department was reimbursed. (See § 10471.1, subd. (b).) In March 1995, the department granted Alvarenga's application for payment of $36,590 from its recovery account. (See § 10471.3) By its decision, the department also suspended Rodriguez's real estate license and made him ineligible for reinstatement until he reimbursed the department for its payment to Alvarenga. (See § 10475.)

In April 1995, Rodriguez petitioned for a writ of administrative mandate, asking that the department's decision be set aside. He declared that he had never had a hearing before the department. Alvarenga and the department answered and opposed the petition. In June 1996, the trial court denied Rodriguez's petition for writ of administrative mandate and entered judgment accordingly.

## II. AUTOMATIC SUSPENSION

### A. *Evolution of Statutory Scheme*

First, Rodriguez contends that the automatic suspension provision codified in section 10475 violates his right to due process. By law, if the Commissioner of the Department of Real Estate grants a claimant sums from the department's recovery account toward satisfaction of a judgment against a licensed broker, the broker's license "shall be automatically suspended upon the date of payment from the Recovery Account. No broker . . . shall be granted reinstatement until he or she has repaid in full . . . the amount paid from the Recovery Account" on his or her behalf. (§ 10475.)

The statutory scheme for determining a claim for payment from the recovery account does not contemplate a formal hearing at which oral evidence may be presented or witnesses may be called. (See *Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285, 295 [90 Cal.Rptr. 144] [predecessor statute]; compare § 10177.5 [permitting commissioner to suspend or revoke a real estate license for fraud, misrepresentation or deceit, but only after hearing] with § 10475 [requiring commissioner to suspend license once claim is granted].) Under the procedure set out by the Legislature, the claimant files an application[3] and notice of the claim is given to the broker—characterized as "the judgment debtor" in the statute. The judgment debtor is allowed an opportunity to file a written response to the claim

---

[3]The application must include identification of the judgment, the amount of the claim and an explanation of its calculation; a detailed narrative statement of the facts explaining the allegations of the complaint on which the underlying judgment is based; a statement of the claimant, signed under penalty of perjury, that the complaint on which the underlying judgment is based was prosecuted conscientiously and in good faith; a description of the searches conducted with respect to the broker's assets; and a representation that the claimant

before the real estate commissioner determines whether the application complies with the legal requirements for compensation. (See §§ 10471-10471.3.) The judgment debtor must be given notice and an opportunity to submit written argument challenging the claim. (See § 10471.1, subds. (a), (c).) However, as the claimant's successful application for sums from the recovery account has the mandatory effect of suspending his real estate license, Rodriguez argues that this statutory procedure is insufficient to satisfy the requirements of due process. Before his license may be suspended, Rodriguez reasons that he must be afforded an opportunity to appear at a formal hearing at which he may offer evidence and cross-examine witnesses.

An earlier version of the applicable statute did not entitle a judgment debtor to notice or an opportunity to submit any written argument when a claim was made that would trigger loss of his or her license. (See former §§ 10471-10475, Stats. 1963, ch. 1426, § 3, pp. 2969-2971, as amended by Stats. 1969, ch. 729, §§ 2-3, pp. 1463-1464.) Under this statutory scheme, the parties to the claim proceeding were the claimant and the department. The broker's license suspension was not made mandatory by the rendition of judgment against the broker, but on the determination in the collateral proceeding to pay the claim from the recovery account. The judgment debtor was not permitted to challenge the claim, even though a successful claim resulted in the mandatory suspension of his or her license. That version of the statute making license suspension mandatory on payment of the judgment creditor's claim was held unconstitutional as a violation of the judgment debtor's due process rights. (See *Slaughter* v. *Edwards, supra,* 11 Cal.App.3d at pp. 293-296; see also *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 269 [246 P.2d 656] [notice and hearing required].)

In 1971, the Legislature amended the law to require that the judgment debtor be given notice of the claim. (See former § 10471, as amended by Stats. 1971, ch. 796, § 2, pp. 1549-1550.) By regulation, the claimant's application is not deemed to be substantially complete unless the claimant provides proof that the judgment debtor was served with the claim and the required notice. (Cal. Code Regs., tit. 10, § 3102, subd. (a).) Other statutory revisions have been made since 1971, including a 1983 enactment requiring that the judgment debtor be notified of a right to contest the claim for payment and the mandatory suspension of license that payment of the claim would cause. (See former §§ 10471, 10471.1, amended by Stats. 1975, ch. 439, § 1, p. 935; Stats. 1976, ch. 271, § 6, pp. 566-567; Stats. 1979, ch. 464, § 1, pp. 1616-1617; Stats. 1981, ch. 714, § 31, pp. 2584-2585; Stats. 1983, ch. 384, § 6, pp. 1616-1618; Stats. 1985, ch. 690, §§ 2-3, pp. 2292-2295;

---

has diligently pursued collection efforts against any other persons who may be liable for the debt. (§ 10471, subd. (c)(3)-(5), (7)(D)-(E).)

Stats. 1987, ch. 861, § 1, pp. 2738-2739; Stats. 1989, ch. 1360, § 8, pp. 5799-5800.) As currently enacted, the statute requires that the claimant serve the judgment debtor with a copy of the claim and a notice of effect that payment from the recovery account has on the judgment debtor's license. (§ 10471.1, subds. (a), (c).) By regulation, the judgment debtor has the right to "submit written argument setting forth in detail the factual and legal bases upon which he or she believes the application should be denied." (Cal. Code Regs., tit. 10, § 3106, subd. (a); see § 10471.1, subd. (c).) He or she also has the right to be represented by counsel when making this argument. (Cal. Code Regs., tit. 10, § 3103, subd. (b).) However, neither statute nor regulation provides the judgment debtor with a right to a formal hearing unless the matter goes to superior court on a petition for writ of mandate. (§§ 10471.5, subd. (c) [right to petition for mandate], 10473.1 [judgment debtor may defend action against recovery account on his or her own behalf and shall have recourse to all appropriate means of defense and review, including examination of witnesses]; see Stats. 1971, ch. 796, § 2, pp. 1549-1550; see also Cal. Code Regs., tit. 10, § 3109 [contemplating judgment debtor's right to file writ of mandate challenging department's decision to make payment from recovery account].)

## B. *Due Process*

Rodriguez cites *Slaughter* v. *Edwards, supra,* 11 Cal.App.3d at pages 293-296, contending that this decision compels us to invalidate his license suspension as contrary to due process because he was not granted a full and formal hearing on Alvarenga's entitlement to satisfy her judgment against him from the department's recovery account. However, subsequent statutory amendments requiring that notice of the claim be given to the broker and giving the broker an opportunity to submit written argument contesting the claim make the underlying law in that case distinguishable. The issue in the matter before us is not—as it was in *Slaughter*—whether the total lack of due process invalidates the license suspension. Instead, we address whether the due process protections that are afforded by the now-amended statutory scheme—notice and an opportunity to provide written argument—are sufficient to satisfy due process without also requiring a full and formal hearing at which oral testimony may be presented.

■ The central purpose of procedural due process is to provide affected parties with the right "to be heard at a meaningful time and in a meaningful manner." (*People* v. *Sutton* (1993) 19 Cal.App.4th 795, 803 [23 Cal.Rptr.2d 632]; see *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 565 [216 Cal.Rptr. 367, 702 P.2d 525] [opportunity to be heard is fundamental requirement of due process].) Due process is a flexible concept. (*People* v. *Hansel* (1992) 1

Cal.4th 1211, 1219 [4 Cal.Rptr.2d 888, 824 P.2d 694].) This flexibility is needed in order to gear the process to the particular need. (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728 [229 Cal.Rptr. 875].) Not every situation to which the right to procedural due process applies calls for the same procedure. *(People* v. *Hansel, supra,* at p. 1219; see *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].) Not every situation requires a formal hearing with full rights of confrontation and cross-examination. (*Saleeby* v. *State Bar, supra,* at p. 565; *Conservatorship of Moore, supra,* at p. 728.) "What must be afforded is a ' "reasonable opportunity" to be heard. [Citations.]' " (*Saleeby* v. *State Bar, supra,* at pp. 565-566.)

■ Under the California Constitution, the extent to which procedural due process is available depends on a weighing of private and governmental interests involved.[4] The required procedural safeguards are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process. Specifically, determination of the dictates of due process generally requires consideration of four factors: the private interest that will be affected by the individual action; the risk of an erroneous deprivation of this interest through the procedures used and the probable value, if any, of additional or substitute safeguards; the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible governmental official; and the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. (*Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 434 [166 Cal.Rptr. 149, 613 P.2d 210]; *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622]; *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 327; see *Alexander D.* v. *State Bd. of Dental Examiners* (1991) 231 Cal.App.3d 92, 97-98 [282 Cal.Rptr. 201].)

■ The fact that the commissioner's determination of Alvarenga's eligibility for payment from the recovery account may ultimately lead to Rodriguez's license suspension constitutes an interest affected by the official action, albeit attenuated.[5] (*Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 327; see *Slaughter* v. *Edwards, supra,* 11

---

[4]Similarly, the United States Supreme Court has acknowledged that the requirements of due process vary according to the specific factual context involved. (See *Hannah* v. *Larche* (1960) 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502]; *Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 328 [248 Cal.Rptr. 704].)

[5]Under federal due process analysis, the appellant must establish a protected property interest. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 481 [33 L.Ed.2d at p. 494]; *Smith* v.

Cal.App.3d at pp. 291-292 [order suspending real estate license without due process is void].) However, the risk of erroneous deprivation of Rodriguez's property interest in his real estate license is remote. The law sets out specific criteria for payment eligibility, which the judgment creditor must explain in his or her claim for payment. (§ 10471, subd. (c).) The broker may offer written argument challenging any or all of these criteria. (§ 10471, subds. (c), (d).) The commissioner exercises no discretion, determining only whether the judgment qualifies for payment under the statute. (See § 10471.3.)

Further, the statute contemplates three levels of due process protection before a broker may lose his or her license. Only a judgment creditor with a final judgment is eligible for payment from the recovery account. (§ 10471, subd. (a).) Thus, a broker is afforded the full procedural safeguards in a court of law before judgment is obtained. The statute also provides for those protections that were allowed to Rodriguez in the administrative process— the right to notice and an opportunity to submit written argument before the commissioner ruled on Alvarenga's claim for payment. Finally, a broker has the right to challenge an adverse decision by traditional mandate. Taken together, these procedures are sufficient to protect real estate brokers without imposing additional requirements at the administrative level. (See § 10471.1, subd. (c); *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 328; Cal. Code Regs., tit. 10, §§ 3106, subd. (a), 3109; see also *Alexander D.* v. *State Bd. of Dental Examiners, supra,* 231 Cal.App.3d at p. 98.) After all, due process "insists upon the opportunity for a fair trial, not a multiplicity of such opportunities." (*Dami* v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 144, 151 [1 Cal.Rptr. 213].)

The third factor weighing into our analysis is the individual's dignitary interest in being informed of the nature, grounds and consequences of the commissioner's decision and in enabling the broker to oppose the claim before a responsible government official. (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269; *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 328.) This factor alone does not compel a full adversarial hearing in every case in which procedural due process is required. It is only one factor in the analysis. (*San Jose Police Officers Assn.* v. *City of San Jose* (1988) 199 Cal.App.3d 1471, 1484 [245 Cal.Rptr. 728].) In our case, the statutory scheme requires the claimant to notify the broker of the claim and

*Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 326.) One may not be deprived of a property right without due process of law. (U.S. Const., Amend. XIV; see Cal. Const., art. I, § 7, subd. (a).) Clearly, a real estate license is a vested property right. (*Slaughter* v. *Edwards, supra,* 11 Cal.App.3d at pp. 291-292; see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-146 [93 Cal.Rptr. 234, 481 P.2d 242] [license to practice one's trade or profession].)

the consequences of a grant of the claim. (§ 10471.1, subds. (a), (c).) The broker also has the right to present written argument opposing the claim to the commissioner. (§ 10471.1, subd. (c); see Cal. Code Regs., tit. 10, § 3106, subd. (a).) It does not appear that a formal hearing would add significantly to the integrity of the administrative process.

Fourth, we must weigh the government's interest in the proceeding, including the function involved and the administrative and fiscal burdens that the additional or substitute procedural requirements would entail. (*Smith v. Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 328.) The recovery account provides minimum and limited compensation to those who have suffered economic losses at the hands of a licensed real estate broker who has no assets from which a valid judgment may be satisfied. (*Temple* v. *Kerwin* (1989) 209 Cal.App.3d 1087, 1091 [257 Cal.Rptr. 651].) The statutory scheme is to be construed liberally to promote its purpose and protect judgment creditors. Relief is to be granted under the statute unless to do so would be clearly forbidden by that statute. Such a statute must be construed " ' ". . . to suppress the mischief at which it is directed, to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy. . . ." ' " (*Doyle* v. *Department of Real Estate* (1994) 30 Cal.App.4th 893, 896-897 [36 Cal.Rptr.2d 193], quoting *Vinci* v. *Edmonds* (1986) 185 Cal.App.3d 1251, 1256 [230 Cal.Rptr. 308].)

The full range of procedural due process rights that Rodriguez argues the state Constitution requires—including the right to a full hearing at which oral testimony may be offered and witnesses may be confronted and cross-examined—would impose great fiscal and administrative burdens on the process. The commissioner, an official without any power to adjudicate, would be diverted from his or her legitimate duties and plagued by the interjection of collateral issues that would delay resolution of the claim and decrease the funds from which payment to judgment creditors such as Alvarenga may be made. (See *Hannah* v. *Larche, supra,* 363 U.S. at pp. 443-444 [4 L.Ed.2d at p. 1322] [investigative function]; *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 328.) To require further procedures that would limit judgment creditors' ability to recover funds from the recovery account thus would run counter to the intent of the Legislature that such opportunities be enhanced. (*Doyle* v. *Department of Real Estate, supra,* 30 Cal.App.4th at p. 896.)

Balancing Rodriguez's private interest against the department's interests, we are satisfied that due process does not require additional protections to those presently provided at a proceeding to determine a claimant's right to

payment from the department's recovery account, even though this determination may lead to a mandatory suspension of a broker's real estate license. (See *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 329.) The procedures that the law currently requires are sufficient to protect Rodriguez's property right from unreasonable suspension and, thus, are adequate to satisfy the requirements of due process. The trial court properly denied Rodriguez's petition challenging the commissioner's suspension order.

### III. STATUTORY RIGHT TO HEARING

■ Rodriguez also contends that even on statutory grounds, he was entitled to a full evidentiary hearing before his license was suspended. He argues that the commissioner made a quasi-judicial determination to revoke his license. He reasons that his license could not be revoked without a hearing unless the statute expressly provides that there shall be no formal hearing. As there is no express statutory statement that no formal hearing shall be conducted, Rodriguez contends that the revocation of his license without a formal hearing was a null act.

As Rodriguez contends, unless a statute expressly provides to the contrary, a license cannot be revoked without a hearing if the law contemplates a quasi-judicial determination of cause for revocation. (See, e.g., *DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255, 259 [288 P.2d 862].) However, his contention turns on the nature of the commissioner's act suspending his license. The language of the statute is mandatory. Once Alvarenga established her entitlement to payment from the recovery account, the commissioner had a duty to suspend Rodriguez's real estate broker's license. (§ 10475.) No factual determination nor exercise of discretion occurs. As these hallmarks of the exercise of quasi-judicial power are absent from this process, we are satisfied that the commissioner's act was not a quasi-judicial act entitling Rodriguez to a formal hearing before license suspension. (See *Brecheen* v. *Riley* (1921) 187 Cal. 121, 125 [200 P. 1042]; see also *DiGenova* v. *State Board of Education, supra,* 45 Cal.2d at p. 260; *Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 175 [196 Cal.Rptr. 670].) There is no right to a formal hearing, either on statutory or constitutional grounds.[6]

---

[6]Rodriguez challenged the department's suspension of his license by means of a petition for writ of administrative mandate. As this decision was ministerial and not quasi-judicial in nature, traditional mandate—not administrative mandate—is the appropriate remedy. (*Dominey* v. *Department of Personnel Administration* (1988) 205 Cal.App.3d 729, 735 [252 Cal.Rptr. 620] [proceeding in which hearing is required by law as prerequisite for administrative mandate]; see Code Civ. Proc., §§ 1085 [traditional mandate lies to compel act which

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied January 24, 1997, and appellant's petition for review by the Supreme Court was denied April 16, 1997.

.

law enjoins], 1094.5, subd. (a) [administrative mandate lies when order made as result of proceeding in which hearsay must be given, evidence must be taken and discretion is vested in an official]; see also Cal. Administrative Mandamus (Cont.Ed.Bar 1989) §§ 3.2, 3.11, pp. 70, 81-82.) To the extent necessary to resolve the issues on appeal, we deem the petition to be one for traditional, not administrative, mandate. (See, e.g., *Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d at p. 735.)