Filed 1/12/15  Berjikian v. Franchise Tax Board CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ENNA BERJIKIAN, et al., | B252427 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC514589) |
| v. | |
| FRANCHISE TAX BOARD, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded.

Vicken O. Berjikian, A Professional Law Corporation, and Freeman M. Butland for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Paul D. Gifford, Senior Assistant Attorney General, W. Dean Freeman, William D. Gardner, Michael Yi, Marta L. Smith, and Leslie Branman Smith, Deputy Attorneys General, for Defendants and Respondents.

## INTRODUCTION

Appellants Enna and Vicken Berjikian[1] challenge the constitutionality of Business and Professions Code section 494.5,[2] under which respondent Department of Motor Vehicles (the DMV) automatically suspended both the Berjikians' driver's licenses, and respondent Board of Pharmacy (the Pharmacy Board) automatically suspended Enna's pharmacist's license, after the Berjikians' names appeared on respondent Franchise Tax Board's (the FTB)[3] list of the state's 500 most delinquent taxpayers.

Respondents demurred to the Berjikians' complaint, arguing that the Berjikians' action is barred under the California Constitution and the Revenue and Taxation Code because the Berjikians did not pay their outstanding tax liabilities prior to filing their complaint. Respondents also argued that even if the Berjikians' claims are not procedurally barred, section 494.5 is constitutional, and the DMV's and the Pharmacy Board's decisions made pursuant to that statute do not violate the Berjikians' due process or equal protection rights. The trial court sustained respondents' demurrer without leave to amend as to the Berjikians' entire complaint, imposed $5,000 in sanctions against the Berjikians, and entered judgment dismissing the Berjikians' action. We reverse the judgment, reverse in part the order sustaining the demurrer, and reverse the order imposing sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

The following factual summary is drawn from the Berjikians' complaint. (See *Howard Jarvis Taxpayers Ass'n v. City of La Habra* (2001) 25 Cal.4th 809, 814 (*Howard*

---

[1]    Because they share the same last name, we refer to the Berjikians by their first names to avoid confusion. (See *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952, fn. 1.)

[2]    All further statutory references are to the Business and Professions Code unless otherwise specified.

[3]    We collectively refer to the Board of Pharmacy, the DMV, and the FTB as respondents.

*Jarvis*) [we assume the truth of the plaintiffs' pleaded facts when reviewing a judgment of dismissal following a sustained demurrer].)

1. *The Berjikians' Licenses and Tax Liabilities*

In 1981, Enna Berjikian received a pharmacist's license from the Pharmacy Board; she later received a license to practice law from the California State Bar in 2006. In 1983, Vicken Berjikian received a license to practice law from the California State Bar. At some time prior to their initiation of the instant lawsuit, the Berjikians received driver's licenses from the state.

In 1997, the FTB issued the Berjikians two Notices of Proposed Assessment (NPA), one assessing the Berjikians' outstanding tax liability for the 1990 tax year, and the other assessing the Berjikians' outstanding tax liability for the 1991 tax year. In 1998, the FTB issued the Berjikians three more NPAs assessing the Berjikians' outstanding tax liabilities for the 1992, 1993, and 1994 tax years. In April 2011, the FTB sent the Berjikians a sixth assessment addressing the Berjikians' outstanding tax liability for the 2004 tax year. The NPAs issued in 1997 and 1998 informed the Berjikians that they had 60 days to challenge the FTB's assessments in writing and, if requested, through an oral hearing before the FTB.

For the 1999, 2002, and 2008 through 2011 tax years, the Berjikians filed tax returns and assessed their own tax liabilities.

The Berjikians never administratively challenged any of the FTB's assessments. At the time the Berjikians initiated the instant case, they owed the FTB nearly $450,000, which consists of more than $100,000 in unpaid taxes.

2. *The Berjikians' License Suspensions*

The Berjikians' names appear on the FTB's list of the state's 500 most delinquent taxpayers owing more than $100,000 in unpaid taxes (delinquency list). In May 2013, after receiving the FTB's delinquency list, the DMV sent the Berjikians notice that pursuant to section 494.5, their driver's licenses would be suspended effective September 20, 2013. The DMV's notice informed the Berjikians that their licenses would be reinstated once their names are removed from the delinquency list. That same month, the

3

Pharmacy Board informed Enna that her pharmacist's license would be suspended pursuant to section 494.5 effective August 30, 2013. After receiving notice of their pending license suspensions, the Berjikians submitted to the FTB requests to have their names removed from the delinquency list due to alleged financial hardship. In July 2013, the FTB summarily denied the Berjikians' requests.

*3.    Court Proceedings*

On July 9, 2013, the Berjikians filed a complaint against respondents seeking injunctive and declaratory relief. The complaint alleged that the DMV's and the Pharmacy Board's enforcement of section 494.5 violated the Berjikians' federal and state due process and equal protection rights. Respondents demurred, arguing the complaint should be dismissed because the Berjikians' claims were barred by Article XIII, section 32 of the California Constitution and Revenue and Taxation Code sections 19381 and 19382[4] as a result of the Berjikians' failure to pay their outstanding tax liabilities prior to filing their complaint. Alternatively, respondents argued the complaint should be dismissed because their enforcement of section 494.5 did not violate the Berjikians' due process or equal protection rights.

On October 16, 2013, the trial court sustained respondents' demurrer without leave to amend. The trial court found the Berjikians' lawsuit was procedurally barred due to the Berjikians' failure to pay their outstanding tax liabilities prior to filing their complaint. The trial court also found that the Berjikians failed to allege a sufficient statutorily conferred interest or benefit to support a due process challenge to section 494.5. Notwithstanding these findings, the court addressed the merits of the Berjikians' claims, finding that respondents' enforcement of section 494.5 did not violate the Berjikians' due process or equal protection rights. After sustaining respondents' demurrer without leave to amend, the trial court imposed $5,000 in sanctions against the Berjikians, finding that the Berjikians' claims were factually and legally groundless. (See

_____

[4]    Sometimes collectively referred to as Section 32.

Rev. & Tax. Code, § 19714.)  Judgment of dismissal was entered, and this timely appeal followed.

## DISCUSSION

### I.    Standard of Review

We apply a *de novo* standard of review to a trial court's order of dismissal following an order sustaining a demurrer.  (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  In other words, we exercise our "independent judgment about whether the complaint states a cause of action as a matter of law." (*Ibid.*)  "In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 814.)

When a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Such a showing can be made for the first time before the reviewing court. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)  "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank*, *supra*, 39 Cal.3d at p. 318.)

A demurrer may be sustained without leave to amend where, " 'the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists.' [Citation.]" (*Seidler v. Municipal Court* (1993) 12 Cal.App.4th 1229, 1233.)  "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

### II.    Relevant Statutory Framework

Under the Revenue and Taxation Code, the FTB is required to examine a taxpayer's tax return to determine whether the taxpayer reported the proper amount of

5

taxes. (Rev. & Tax. Code, § 19032.) In the event the FTB determines that the taxpayer disclosed taxes less than what the taxpayer actually owes, the FTB must notify the taxpayer of the deficiency. (Rev. & Tax. Code, § 19033.) Once the FTB's notice is mailed, the taxpayer has 60 days to file a written protest against the deficiency assessment. (Rev. & Tax. Code, § 19041.) If the taxpayer fails to timely challenge the deficiency assessment within 60 days of the date notice is mailed, the assessment becomes final. (Rev. & Tax. Code, §§ 19041 & 19042.) If the taxpayer files a timely challenge, the FTB is required to reconsider its assessment and, if the taxpayer so requests, must afford the taxpayer an oral hearing. (Rev. & Tax. Code, § 19044.) After a timely challenge, if the taxpayer is dissatisfied with the FTB's decision, the taxpayer may appeal that decision to the State Board of Equalization (the SBE). (Rev. & Tax. Code, § 19045.)

Under Revenue and Taxation Code section 19195, subdivision (a), the FTB is required to publish at least twice each year a list naming the state's 500 taxpayers with the largest tax delinquencies in excess of $100,000. Before including a taxpayer's name on the delinquency list, the FTB must inform the taxpayer that his or her name will be included on the list unless the taxpayer pays the amount of outstanding taxes or timely makes arrangements with the FTB to pay that amount. (Rev. & Tax. Code, § 19195, subd. (e).)

Under section 494.5, when a state licensing agency such as the DMV or the Pharmacy Board receives a delinquency list containing the name of a taxpayer to whom the agency has issued a license, that agency is required to suspend the taxpayer's license. (§ 494.5, subds. (a)(1)-(2) & (b)(4).)[5] The licensing agency must notify the taxpayer that his or her license will be suspended based on the inclusion of the taxpayer's name on the delinquency list, and the agency must wait at least 90 days from the time it issues that notice before suspending the taxpayer's license. (§ 494.5, subds. (e)(2) & (f)(1).) A

---

[5] The State Bar of California is exempt from the mandatory suspension requirement and may recommend the suspension of a license if an attorney's name is included on a certified list. (§ 494.5, subd. (a)(2).)

taxpayer whose name appears on the delinquency list is entitled to receive a 90-day temporary license from the licensing agency if he or she is otherwise eligible to retain his or her license. (§ 494.5, subd. (e)(2).)

After a taxpayer receives notice of a pending license suspension, he or she may challenge the pending suspension by making a timely written request to the FTB or SBE only; the taxpayer may not challenge the suspension through the licensing agency. (§ 494.5, subds. (h) & (m).) After submitting a written challenge, the taxpayer's name will be removed from the delinquency list, and his or her license will be reinstated, only if he or she has done one of the following: (1) satisfied his or her tax obligation or entered into an installment payment agreement to satisfy the obligation; (2) submitted a timely challenge to the FTB, but the FTB will be unable to timely act on that challenge; or (3) established that he or she is unable to satisfy the outstanding tax obligation due to financial hardship. (§ 494.5, subd. (h)(1)-(3); see also § 494.5, subd. (m) ["The process described in subdivision (h) shall constitute the sole administrative remedy for contesting the issuance of a temporary license or the denial or suspension of a license under this section."].)

## III.    Section 32

In sustaining respondents' demurrer without leave to amend, the trial court found the Berjikians' action was barred by Section 32 because the Berjikians did not pay their outstanding tax liabilities prior to filing their complaint. The Berjikians contend the trial court erred in applying Section 32 because they do not seek to prevent the FTB from collecting their outstanding tax liabilities; rather, they challenge only the constitutionality of respondents' enforcement of section 494.5's license-suspension provision without first affording a formal hearing.

Article XIII, Section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." Revenue and Taxation Code

7

sections 19381 and 19382 codify this constitutional prohibition against prepayment challenges to the state's collection of taxes with respect to claims involving the FTB or the SBE. (*Nast v. State Bd. of Equalization* (1996) 46 Cal.App.4th 343, 346.)

Section 32's prohibition is intended "to allow revenue collection to continue during litigation so that essential public services dependent on the [taxes] are not unnecessarily interrupted." (*Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 (*Pacific Gas*).) Section 32 limits the ability of the courts to hear matters and issue relief that would interfere with the state's collection of taxes. (*Western Oil & Gas Assn. v. State Bd. of Equalization* (1987) 44 Cal.3d 208, 213 (*Western Oil*), citing *Pacific Gas*, *supra*, 27 Cal.3d at pp. 282-283.) Accordingly, in determining whether Section 32 prohibits a taxpayer's prepayment tax-related action, " '[t]he relevant issue is whether granting the relief sought would have the effect of impeding the collection of a tax. [Citation.]' [Citation.]" (*Water Replenishment District of Southern California v. City of Cerritos* (2013) 220 Cal.App.4th 1450, 1465; see also *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 252 ["[A]rticle XIII, section 32 simply prohibits courts from 'prevent[ing] or enjoin[ing] the collection of any tax' *during the pendency of litigation challenging the tax.*"], italics in original.)

We conclude Section 32 does not bar the Berjikians' constitutional challenge to section 494.5. Allowing the Berjikians to proceed with their action would not impede the state's ability to collect the Berjikians' outstanding taxes. Section 494.5 establishes a mechanism through which the state may impose non-monetary sanctions against the state's most delinquent taxpayers. The statute does not enable the state to collect outstanding taxes (e.g., by seizing a taxpayer's personal or real property) (see e.g., *Dupuy v. Superior Court* (1975) 15 Cal.3d 410, 417-418 [Section 32 bars prepayment challenge to state's seizure of taxpayer's property where state does not provide for pre-seizure hearing]), or create additional tax liability for taxpayers that fall within its scope. (See *California Logistics, Inc. v. State* (2008) 161 Cal.App.4th 242, 247 (*California Logistics*) ["A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid."].) Further, the Berjikians' action does not challenge the validity

8

or amount of outstanding taxes, interest, and penalties the state has determined the Berjikians owe. (See *Chen v. Franchise Tax Bd.* (1998) 75 Cal.App.4th 1110, 1114 ["[A] taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid."].) Accordingly, if the Berjikians were to ultimately succeed on their constitutional challenge to section 494.5, the state would in no way be impaired from collecting the Berjikians' outstanding taxes by initiating collection proceedings against the Berjikians.

In light of the foregoing, we hold the trial court erred in finding the Berjikians' entire action is barred by Section 32 and address the trial court's order sustaining respondents' demurrer as to the Berjikians' constitutional claims.

## IV. Procedural Due Process

The Berjikians contend their complaint sufficiently alleges claims for violations of their state and federal procedural due process rights stemming from respondents' enforcement of section 494.5. Specifically, the Berjikians argue they were not afforded an adequate opportunity to challenge respondents' decision to suspend their licenses before those suspensions went into effect. We agree and hold the trial court abused its discretion in sustaining respondents' demurrer without leave to amend as to the Berjikians' procedural due process claims.

As a preliminary matter, we observe that the Berjikians have pled sufficient property interests to support procedural due process claims brought under the state and federal constitutions. Here, the Berjikians' procedural due process claims are premised on respondents' suspension of Enna's state-issued pharmacist's license and both the Berjikians' state-issued driver's licenses. Enna possesses a property interest in her pharmacist's license sufficient to entitle her to adequate process before that license may be suspended. Our Supreme Court has recognized that an individual "has a property interest in the right to practice [her] profession that cannot be taken from [her] without due process." (*Conway v. State Bar* (1989) 47 Cal.3d 1107, 1113, citing *Barry v. Barchi* (1979) 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365; see also *American Liberty Bail Bonds, Inc. v. Garamendi* (2006) 141 Cal.App.4th 1044, 1060 [bail agent has a sufficient

9

interest in his bail-agent license to trigger state and federal due process protections before that license may be suspended by the Department of Insurance].)  Further, both the Berjikians possess property interests in their driver's licenses sufficient to invoke due process protections.  (See *Rios v. Cozens* (1972) 7 Cal.3d 792, 795-796 [judgment vacated by *Department of Motor Vehicles of State of Cal. v. Rios* (1973) 410 U.S. 425, 93 S.Ct. 1019, 35 L.Ed.2d 398; but judgment reiterated and reinstated by *Rios v. Cozens* (1973) 9 Cal.3d 454], citing *Bell v. Burson* (1971) 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 ["Suspension of issued [driver's] licenses . . . involves state action that adjudicates important interests of the licensees.  In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment"]; see also *Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1161.)

It is well settled that "some form of hearing is required before an individual is finally deprived of a property interest."  (See *Mathews v. Eldridge* (1976) 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18.)  Therefore, prior to a final deprivation of a protected interest, the affected individual must be afforded the "opportunity to be heard at a meaningful time and in a meaningful manner." (*Ibid.*)  This requires that the individual be afforded the reasonable opportunity to be heard "upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." (*Anderson Nat. Bank v. Luckett* (1944) 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692 (*Anderson*); *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 565 (*Saleeby*).)

Respondents contend the Berjikians were afforded meaningful opportunities to be heard before their licenses were suspended.  Specifically, respondents argue the Berjikians were afforded the opportunity to demonstrate financial hardship, through which they could have avoided suspension of their licenses.  (See § 494.5, subd. (h)(3).)  Respondents further argue the Berjikians could have challenged the sufficiency of each of the FTB's deficiency determinations, which formed the factual basis for respondents' enforcement of section 494.5 against the Berjikians, within 60 days of the FTB's issuance of each NPA.  (See Rev. & Tax. Code, §§ 19041, 19042, & 19044.)

10

As noted above, procedural due process guarantees the reasonable opportunity to be heard through procedures that are commensurate with the right for which the constitutional protection is invoked. (*Anderson*, *supra*, 321 U.S. 233 at p. 246; *Saleeby*, *supra*, 39 Cal.3d at p. 565.) This guarantee cannot be fulfilled, however, unless the opportunity to be heard is "granted at a time when the deprivation can still be prevented." (*Fuentes v. Shevin* (1972) 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556.) Whether state action deprives an individual of his or her protected property interest without due process requires a determination of whether the action involves arbitrary adjudicative procedures in working the challenged deprivation. (*People v. Ramirez* (1979) 25 Cal.3d 260, 263-264.) Here, the Berjikians were never afforded a reasonable opportunity to be heard at a meaningful time, or in a meaningful manner, before or after their licenses were suspended.

First, we disagree with respondents' argument that the financial-hardship exemption set forth in section 494.5, subdivision (h)(3) afforded the Berjikians a meaningful opportunity to be heard before their licenses were suspended. Subdivision (h)(3) establishes an exemption from the statute's license-suspension mandate upon a taxpayer's showing of financial hardship. (§ 494.5, subd. (h)(3).) Accordingly, section 494.5 guarantees that a taxpayer may not be deprived of his or her state-issued license without first being afforded the opportunity to establish that he or she qualifies for a financial-hardship exemption. It thus requires adequate procedures to determine whether the taxpayer suffers sufficient financial hardship to avoid suspension of his or her license. (See *Saleeby*, *supra*, 39 Cal.3d at p. 564, quoting *Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 ["[The dimensions of due process rights] are defined by existing rules [ ] that stem from an independent source such as state law – rules [ ] that secure certain benefits and that support claims of entitlement to those benefits."].) The statute, however, does not afford adequate procedural protections to ensure against an erroneous or arbitrary deprivation of a taxpayer's license when the taxpayer claims that he or she qualifies for a financial-hardship exemption.

11

Although section 494.5, subdivision (h)(3) requires the FTB to make an individual determination of a taxpayer's financial status, the statute does not delineate, and the FTB has been unable to explain,[6] how the FTB is required to make such a determination. For example, the statute does not establish standards that the FTB must follow in processing a taxpayer's financial-hardship request, and it does not require the FTB to explain its rationale in denying a taxpayer's request. (See § 494.5, subd. (h)(3).) Accordingly, section 494.5 does not establish any procedures that guard against an arbitrary determination of whether a taxpayer qualifies for a hardship exemption. (See *Rodriguez v. Department of Real Estate* (1996) 51 Cal.App.4th 1289, 1297 (*Rodriguez*) ["The required procedural safeguards are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process."].) Additionally, section 494.5 expressly precludes a taxpayer from contesting the FTB's denial of a hardship-exemption request (see § 494.5, subd. (m)), which is a decision that involves a separate factual determination from that underlying the FTB's initial assessment of a taxpayer's outstanding tax liability, for which the FTB does afford the right to a contested hearing. (Rev. & Tax. Code, §§ 19041 & 19045.) As a result, an aggrieved taxpayer who files an unsuccessful hardship-exemption request is left without any meaningful explanation as to why his or her request was denied, and he or she has no means of contesting that decision. Accordingly, section 494.5 does not afford a taxpayer adequate due process, as it guarantees that a taxpayer's license will not be suspended in the event the taxpayer proves that he or she suffers financial hardship but fails to ensure that the FTB's requisite hardship determination will not be reached through an arbitrary decisionmaking process.

Second, we disagree with respondents' contention that the Berjikians forfeited their rights to contest respondents' enforcement of section 494.5 by failing to timely

---

[6]     At oral argument, we requested the FTB submit judicially noticeable regulations or other documents, if available, that address the FTB's procedures for determining whether a taxpayer's request to obtain a hardship determination under section 494.5, subdivision (h)(3) should be granted or denied. The FTB responded that it was unable to submit any such documents.

12

challenge the FTB's deficiency assessments issued between 1997 and 2011. We disagree because section 494.5 was enacted after the expiration of the 60-day periods within which the Berjikians could contest the FTB's assessments, and the Berjikians could not have been aware that their licenses could be suspended on the basis of those assessments before those periods expired. (See Rev. & Tax. Code, §§ 19041, 19042, 19044; see also § 494.5.)

The FTB first issued the Berjikians two NPAs in 1997. In 1998, the FTB issued the Berjikians three more NPAs. Finally, on April 25, 2011, the FTB sent the Berjikians a sixth NPA. The time to challenge any of the deficiency assessments addressed in those NPAs expired 60 days after the challenged assessment's corresponding NPA was mailed. (See Rev. & Tax. Code, §§ 19041, 19042, 19044.) Thus, the last opportunity the Berjikians had to challenge one of the FTB's deficiency assessments was on June 24, 2011. However, section 494.5 did not go into effect until January 1, 2012. Therefore, at the time the Berjikians were able to challenge the factual predicate supporting respondents' decision to suspend the Berjikians' licenses, the statute authorizing that decision had yet to go into effect. Accordingly, when the Berjikians did have the opportunity to challenge the grounds supporting respondents' suspension of their licenses, their property interests in those licenses had yet to be implicated by section 494.5. However, once their property interests were implicated at the time section 494.5 went into effect, the Berjikians were no longer able to contest the grounds supporting respondents' suspension of their licenses. As a result, the Berjikians never had a meaningful opportunity to be heard before their licenses were suspended by way of their right to challenge the FTB's deficiency assessments under the Revenue and Taxation Code. (See *Fuentes*, *supra*, 407 U.S. at p. 81.)

Contrary to respondents' assertions, the circumstances giving rise to the Berjikians' license suspensions in the instant case are materially distinguishable from those at issue in *Rodriguez*, *supra*, and *Pickell v. Sands* (E.D. Cal., Feb. 7, 2014, 2:12-CV-0373 TLN DAD) 2014 WL 546049, at *1. In both *Rodriguez* and *Pickell*, the plaintiffs' professional licenses were automatically suspended without the right to formal

13

administrative hearings before the agency responsible for suspending the licenses, and in both cases the reviewing courts rejected constitutional challenges to the automatic suspension provisions of the underlying statutory schemes (section 7145.5 in *Pickell*; section 10475 in *Rodriguez*). However, in both cases, the courts' constitutional analyses turned largely on the existence of prior opportunities to challenge the factual bases giving rise to the automatic suspensions through formal hearings afforded at times when the plaintiffs' property interests were already at stake -- opportunities that did not exist in the Berjikians' case. (See *Rodriguez*, *supra*, 51 Cal.App.4th at p. 1298; *Pickell*, *supra*, 2014 WL 546049 at *7.)

For example, in *Rodriguez,* before the plaintiff's broker's license was suspended under section 10475, one of the plaintiff's former clients was required to obtain a final judgment against the plaintiff in a trial court. (*Rodriguez*, *supra*, 51 Cal.App.4th at pp. 1296, 1298.) Since the final judgment served as the factual basis underlying section 10475's license-suspension provision, the Court of Appeal observed that the plaintiff was afforded "the full procedural safeguards in a court of law" before his license was suspended through the separate proceeding leading to the final judgment. (*Id*. at p. 1298.) Further, the statutory scheme in *Rodriguez* afforded the plaintiff contractor an additional level of due process protection that the Berjikians do not enjoy under section 494.5: the right to petition the trial court for a writ of mandate in the event the plaintiff's written challenge to his license suspension was denied. (See *id.* at pp. 1296, 1298.)

In *Pickell,* the plaintiff's contractor's license was automatically suspended pursuant to section 7145.5 after he failed to resolve his outstanding tax liabilities assessed by the FTB. (*Pickell*, *supra*, 2014 WL 546049 at **3-5.) Although similar to section 494.5 in that it authorizes the Contractor's State Licensing Board to suspend a contractor's license in the event the contractor incurs outstanding final tax liabilities assessed by the FTB, the statute in *Pickell* was enacted in 1990, more than a decade before the FTB issued its first assessments against the plaintiff. (See *id*. at **3-4; see also § 7145.5.) Accordingly, at the time the FTB issued its assessments, and throughout the periods the plaintiff was able to challenge those assessments, the plaintiff's property

14

interest in his contractor's license was already subject to deprivation under section 7145.5. In light of this fact, the district court found that the plaintiff was afforded a reasonable opportunity to be heard through the Revenue and Taxation Code's separate procedures for challenging the FTB's tax assessments before his license was automatically suspended under section 7145.5. (*Pickell*, *supra*, 2014 WL 546049 at **7-8; see also *Goldberg v. Kelly* (1970) 397 U.S. 254, 267 ["Due process does not, of course, require two hearings."].)

In light of the foregoing, we conclude that the Berjikians were not afforded adequate procedural safeguards to ensure against an erroneous deprivation of their property interests in their state-issued licenses. Accordingly, we reverse the trial court's judgment with respect to its order dismissing the Berjikians' procedural due process causes of action without leave to amend.

## V.     Equal Protection and Substantive Due Process

The Berjikians next contend their complaint sufficiently alleges causes of action for violations of their equal protection and substantive due process rights stemming from respondents enforcement of section 494.5. For the reasons set forth below, we disagree.

### A.  *Equal protection*

The Berjikians argue section 494.5 impermissibly singles out licensees who fall within the state's 500 largest tax delinquencies totaling more than $100,000. We reject this argument because section 494.5 is rationally related to a legitimate state interest.

The concept of equal protection requires that "persons similarly situated with respect to the legitimate purpose of [a particular] law receive like treatment. [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) To establish a successful equal-protection claim, an individual must first demonstrate that the state has adopted a classification or enacted a regulation that affects similarly situated groups differently. (*Ibid.*) "'[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*' [Citation.]"

15

(*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481, italics in original.) "Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' [Citation.]" (*Ibid.*, alteration in original.)

The Berjikians assert section 494.5 treats similarly-situated state licensees different by punishing only those licensees who fall within the state's 500 most delinquent taxpayers and owe more than $100,000 in outstanding taxes. Because the regulation addresses the state's economic policy and does not implicate a suspect classification, a fundamental right, or gender, section 494.5 is subject to rational basis review. (See *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200; *Kasler*, *supra*, 23 Cal.4th at p. 481.)

Section 494.5 withstands such review. The state has a legitimate interest in ensuring taxes are paid and collected. (See *California Logistics, supra*, 161 Cal.App.4th at p. 251; see also *Dupuy*, *supra*, 15 Cal.3d at p. 416.) Limiting section 494.5's application to the state's top 500 delinquent taxpayers provides a feasible method of achieving this interest by creating a taxpaying incentive for the state's most egregious tax offenders who are likely able to contribute the most to the state's tax backlog due to their professional employment. While the state could have set section 494.5's eligibility cutoffs at numbers higher or lower than the 500 most delinquent taxpayers who owe at least $100,000 while still maintaining a feasible system, this possibility alone does not render section 494.5's distinction unconstitutional. (See *Kasler*, *supra*, 23 Cal.4th at p. 482.) The state's decision to cap the list at 500 delinquent taxpayers strikes a rational balance between the state's interest in maintaining a manageable number of taxpayers potentially subject to license suspension while providing a large enough pool from which the state may recover a meaningful amount of unpaid taxes without substantially interfering with the ability of the state's taxpayer base to earn a living.

**B. Substantive due process**

On appeal, the Berjikians address their substantive due process claims only to the extent that they allege section 494.5 impermissibly infringes on Enna's right to engage in the profession of her choice; they do not address whether, or to what degree, their

16

substantive due process rights are implicated by section 494.5's suspension of their driver's licenses. Therefore, we limit our following discussion to the Pharmacy Board's suspension of Enna's pharmacist's license. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."].)

In the context of legislative action, "the constitutional guaranty of substantive due process protects against arbitrary . . . action; it requires legislation not to be 'unreasonable, arbitrary or capricious' but to have 'a real and substantial relation to the object sought to be attained.' [Citation.]" (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 711.) If the complained-of legislation does not implicate a fundamental right, it comports with substantive due process "so long as it reasonably relates 'to a proper legislative goal.' [Citation.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125.)

The right to choose one's profession is not fundamental. (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 210 ["the courts have concluded . . . there is no fundamental right to work at a particular occupation or for a particular employer"]; *California Gillnetters Assn. v. Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1155 (*Gillnetters*).) Therefore, a regulation restricting an individual's ability to engage in a certain profession does not run afoul of substantive due process unless it bears no rational relationship to a legitimate government interest. (See *Landau*, *supra*, 81 Cal.App.4th at p. 210, citing *Gillnetters*, *supra*, 39 Cal.App.4th at p. 1155.) In the context of legislation regulating an individual's ability to engage in a certain profession, such legislation will withstand constitutional scrutiny if it bears a rational connection with both a legitimate government interest and the affected individual's fitness to practice his or her profession. (See *Dittman v. California* (9th Cir. 1999) 191 F.3d 1020, 1030 (*Dittman*), citing *Schware v. Board of Bar Examiners* (1957) 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796; see also *In re Johnson* (1992) 1 Cal.4th 689, 698, fn. 5.)

17

The Berjikians argue section 494.5's license-suspension provision violates Enna's substantive due process rights because it does not bear a rational relationship to Enna's fitness to engage in the pharmaceutical profession. We disagree.

Section 494.5 withstands rational basis review under a substantive due process analysis. First, as discussed above, the state has a legitimate interest in ensuring the prompt collection of taxes, and section 494.5 bears a rational relationship to that interest. (See *California Logistics, supra*, 161 Cal.App.4th at p. 251.) Second, the Legislature rationally could have concluded that a licensed pharmacist's failure to pay taxes such that he or she has accumulated more than $100,000 in outstanding taxes and is among the state's 500 most delinquent taxpayers is related to the pharmacist's capacity to maintain financial accountability while engaging in the pharmaceutical profession. (See *Dittman*, *supra*, 191 F.3d at pp. 1031-1032.) Indeed, in a separate but related context, the Legislature has articulated the need for those engaging in the pharmaceutical profession to maintain financial accountability. For example, prior to enacting section 494.5, the Legislature authorized the Pharmacy Board to adopt and enforce regulations requiring pharmacy corporations to maintain adequate financial security to ensure that such corporations are capable of satisfying claims made against them by their patients or clients. (See § 4154.) Conceivably, section 494.5 represents another means through which the state is able to better ensure that one engaging in the pharmaceutical profession maintains a sufficient level of financial accountability. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 261 ["[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and it might be thought that the particular legislative measure was a rational way to correct it."].) To be sure, a pharmacist's ability to remain current on his or her tax obligations reflects upon that individual's ability to remain financially accountable for the liabilities that may arise out of his or her pharmaceutical practice. (Cf. *Dittman*, *supra*, 191 F.3d at p. 1032 ["[A]n acupuncturist who is incapable of paying, or refuses to pay, . . . taxes is less likely to satisfy potential liabilities owed to patients."].)

18

In light of the foregoing, we conclude the trial court properly dismissed the Berjikians' equal protection and substantive due process claims without leave to amend.

## VI.    Sanctions

After sustaining respondents' demurrer without leave to amend, the trial court imposed $5,000 in sanctions against the Berjikians pursuant to Revenue and Taxation Code section 19714 (hereinafter referred to as section 19714).  Under section 19714, "[w]henever it appears to the State Board of Equalization or any court of record of this state that proceedings before it under this part have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in the proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies, a penalty in an amount not in excess of five thousand dollars ($5,000) shall be imposed."  In imposing sanctions against the Berjikians, the trial court found the Berjikians' entire action lacked factual and legal merit.  The Berjikians contend the court abused its discretion in imposing sanctions because they adequately pled claims for violation of their constitutional rights.  We agree.

We review the trial court's sanctions order for an abuse of discretion.  (Compare Rev. & Tax. Code, § 19714 with Code Civ. Proc., § 128.5 [under Code of Civil Procedure section 128.5, trial courts may order a party and its attorney to pay reasonable expenses for initiating a suit that is frivolous or solely intended to cause unnecessary delay]; see also *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478; *Foundation for Taxpayer and Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388.)  An action "should be held to be frivolous only when it is prosecuted for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it indisputably has no merit – when any reasonable attorney would agree that the [action] is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  As we concluded above, the Berjikians have adequately pled claims for violations of their state and federal procedural due process rights arising out of respondents' enforcement of section 494.5, and those claims are not barred by Section 32.

19

Accordingly, the Berjikians' action is not frivolous and does not warrant imposition of sanctions under section 19714.

## DISPOSITION

The judgment is reversed, and the matter remanded for proceedings not inconsistent with this opinion.  The parties are to bear their own costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                    **ZELON, J.**

20